## HENRY L. TURNER

### *v.*

## THE OSGOOD ART COLORTYPE COMPANY.

*Opinion filed October 23, 1906—Rehearing denied Dec. 11, 1906.*

1. EVIDENCE—*evidence of a usage is not admissible to contradict or vary contract.* Evidence of a usage may be admissible to add to or explain the terms a written contract but not to vary or contradict such terms, either expressly or by implication.

2. SAME—*when admitting evidence of usage is not prejudicial.* In an action on the guaranty of a written contract providing for the delivery of certain specified pictures then in course of completion as represented by proofs already delivered, admitting evidence of a usage in the colortype trade not to "rough" pictures unless "roughing" is expressly contracted for is not prejudicial error, where the evidence shows the proofs delivered were not roughed, but that after the contract was made an estimate was furnished for "roughing" at an additional price.

3. CONTRACTS—*when construction of contract is for the jury.* Where the construction of a written contract depends not only upon the meaning of the words employed but also upon extrinsic facts or the construction which the parties themselves have placed upon it, which is to be proved as any other fact, if the facts so proven are controverted then the whole question as to what the contract was should be submitted to the jury under proper instructions.

4. SAME—*when court does not err in instructing jury as to the meaning of contract.* Where a written contract for the delivery of pictures expressly provides that the first ten thousand of each subject shall have backgrounds in two colors and subsequent runs of ten thousand should have backgrounds in four colors, it is not error for the court to instruct the jury, in an action to recover for the first ten thousand of each subject, that the purchaser was not warranted in refusing to accept them because the background was not in four colors.

5. SAME—*party alleging performance of a contract must prove strict performance.* Except in the case of building contracts, where a substantial performance is sufficient, a party suing at law on a written contract and alleging performance of it can only recover by proving performance in strict accordance with the terms; but it is not prejudicial error, in such a case, to give an instruction permitting a recovery for substantial performance, if the evidence shows the contract was literally performed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding.

MENZ I. ROSENBAUM, and LOUIS M. CAHN, (GEORGE M. HOFFHEIMER, of counsel,) for appellant.

LACKNER, BUTZ & MILLER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Henry L. Turner, a banker doing business under the name of Henry L. Turner & Co., guaranteed the performance by the American Soligraph Company of a contract by which that company agreed to deliver to appellee two notes of the American Consumers Alliance, Inc., for $1741.50 each, in payment for 160,000 pictures, consisting of 10,000 of each of sixteen different subjects. One note was delivered when the contract was executed and was paid at maturity. Pictures were delivered by the appellee to the American Soligraph Company which it refused to accept as a performance of the appellee's contract for three reasons: First, that there were but two colors in the borders when there should have been four; second, that the pictures were not roughed; and third, that there were specks in the borders. The second note was to be delivered when the pictures were received, and not having been delivered, the appellee brought this suit against appellant in the superior court of Cook county and recovered judgment upon his guaranty for $2076.76. The Branch Appellate Court for the First District affirmed the judgment, and appellant appealed from the judgment of the Appellate Court.

We cannot say that the record is free from error, but we are of the opinion that such errors as occurred should not

work a reversal of the judgment for the reason that no other conclusion could have been reached by the jury. The contract and guaranty were as follows:

"CHICAGO, *Sept. 7, 1900.*

"*Osgood Art Colortype Co., City:*·

"*Gentlemen*—Regarding the matter of the pictures now in the course of completion by your company, we propose the following and offer for your acceptance: That on the acceptance of this agreement we will deliver to you a note signed by the American Consumers Alliance, Inc., and endorsed by Henry L. Turner & Co., amounting to $1741.50. In consideration of which you agree to deliver to us ten thousand (10,000) each of the pictures (16) sixteen subjects, as represented by the proofs now in our possession, at the earliest possible time and not later than October 15, and on the delivery of the pictures to us we will give you another note signed by the American Consumers Alliance, Inc., and endorsed by Henry L. Turner & Co., for the amount of $1741.50. The two obligations to pay the account in full and both to mature January 1, 1901.

"In consideration of the several agreements above, it is fully understood that some changes are to be made on these plates, according to the statement that was made by Mr. Behrens that the plates could be altered.

"Trusting you will find this satisfactory and we may have your acceptance at once, we are

Very truly,

AMERICAN SOLIGRAPH COMPANY,

By J. A. Stevens.

"We guarantee the execution of this contract by the American Soligraph Company.

HENRY L. TURNER & Co.

Accepted: Osgood Art Colortype Co.,

Frederick I. Osgood, *Pres.*,

C. J. Whipple."

The contract related to pictures then in the course of completion and provided for changes in the plates, and the history of the transaction is as follows: The defendant and J. A. Stevens had contemplated establishing in Chicago the business of producing and selling art specialties and advertising novelties, and on February 20, 1900, they entered into an agreement by which defendant was to furnish sums of money as requested by Stevens, to the amount of $600, in laying the foundation and preparing the way for that busi-

ness. A corporation named American Soligraph Company was to be organized and defendant was to receive sixty per cent of the capital stock, and the money advanced by him was to be refunded before any dividends were paid. In pursuance of that agreement propositions to furnish reproductions of oil paintings furnished by him were made to him by plaintiff. One proposition, which was not accepted, was dated April 12, 1900, offering to furnish reproductions of sixteen different oil paintings and to print 10,000 copies of each subject, with paper stock of a certain weight and backgrounds of four different colors, and 10,000 copies of reproductions of sixteen other subjects of a different size, for specified prices. The next day, April 13, upon request of defendant for a new estimate, a different proposition was submitted, by which plaintiff proposed to furnish 10,000 each of eight subjects of the larger size and 10,000 each of eight subjects of the smaller size with two backgrounds, and an additional 10,000 of each subject with four different backgrounds. That proposition was accepted by the defendant as to the first 10,000 of each subject, with the privilege of increasing the order to 20,000 on each sheet before the run was finished. In May, 1900, plaintiff made plates for the pictures from paintings furnished by the defendant and made two or three proofs of each, which were submitted to Stevens, the agent of the defendant. Stevens returned one set of the proofs to plaintiff endorsed ".O. K. for colortype and border," and the other proofs were retained. The proofs were not roughed, and Stevens said they were good and he had submitted them to the defendant. What is called "roughing" is a separate process after the printing of a picture, which gives to it somewhat the effect of an oil painting, increases its durability and improves its appearance. The proposition of April 13 required the plaintiff to furnish 200 prints from each plate by June 1, which were to be used as samples by canvassing agents employed to take orders for calendars in which the pictures were to be used. Under the agreement

200 prints from each plate were delivered to Stevens and were not roughed. He returned them soon after with a request that they should be roughed, that he might see how they would look after they were put through that process. Plaintiff roughed the pictures and returned them to Stevens, who requested plaintiff to give him a price for roughing the whole 160,000 under the contract. Plaintiff offered to do that work for $4 per thousand, and Stevens declined the offer, saying that he could have the work done elsewhere for $3 per thousand. The process of roughing consists of passing a picture between a roller and a cylinder with a rough surface, which slightly roughens the surface of the paper. The proposition of April 13 referred to the one of April 12, and stated that other conditions should remain as stated in the former estimate. The organization of the Soligraph Company was completed June 28, 1900, and the business was then turned over to that corporation, with Stevens in charge as manager. Pictures were in the course of completion under the contract of April 13 when the contract of September 7 between the plaintiff and the Soligraph Company, which had taken the place of defendant, was entered into, and the defendant assumed the obligation of guarantor.

During the trial the court admitted evidence to prove the existence of a usage in the colortype trade not to rough pictures unless roughing has been expressly contracted for, and it is contended that the court erred in overruling objections to such evidence. Both parties relied upon an express agreement for the delivery of certain specified pictures then in the course of completion and as represented by proofs in the possession of the Soligraph Company, with the exception of some changes to be made on the plates, which were made as agreed. The only question between the parties was the identification of the proofs and the pictures in the course of completion referred to in the contract. The plaintiff contended that the language referred to the proofs furnished to Stevens and approved by him, while defendant insisted that

it referred to the roughed pictures which had been returned by Stevens and roughed by plaintiff. There was evidence that the parties themselves had put a construction upon the contract, but the agreement was for the delivery of certain specified pictures, and evidence of a usage in the colortype trade was not admissible to vary or control that agreement. It was not a case where it can be said that the parties were supposed to have contracted in reference to a usage or custom of the colortype trade, and while evidence of usage may be admissible to add to or explain the terms of a written instrument it is never admissible to vary or contradict such terms, either expressly or by implication. (*Gilbert & Co.* v. *Mc-Ginnis,* 114 Ill. 28; *Leavitt* v. *Kennicott,* 157 id. 235; *Western Union Cold Storage Co.* v. *Produce Co.* 197 id. 457.) The evidence, however, is undisputed that the proofs delivered were not roughed; that the pictures delivered to be used as samples by canvassing agents were returned by Stevens with a request to rough them; that he negotiated with the plaintiff to have all the pictures put through that process, and when a price of $4 a thousand was given him he declined because he could get the work done cheaper elsewhere. The contract referred to proofs in the possession of the Soligraph Company which were not roughed, and the evidence would not have justified the jury in finding that the finished pictures were to have been like those which were returned, in view of the undisputed evidence that Stevens obtained an estimate for roughing the whole at an additional price. The evidence of usage was therefore not prejudicial to the rights of the defendant.

The court instructed the jury that the Soligraph Company was not warranted in refusing to accept the pictures because of the fact that the backgrounds were in two colors instead of four, and it is contended that the court thereby invaded the province of the jury. A large amount of oral evidence was introduced upon the trial for the purpose of identifying the subject matter of the contract and showing

the construction put upon it by the parties. The meaning of a written contract is ordinarily a question of law for the court and not one of fact for the jury, but if the construction depends not only upon the meaning of the words employed but upon extrinsic facts and circumstances, or upon the construction which the parties themselves have placed upon the contract, which is to be proved like any other fact, if such facts are controverted the inference to be drawn is for the jury, and in such a case the whole question as to what the contract was should be submitted to the jury under proper instructions. (1 Thompson on Trials, sec. 1083; 23 Am. & Eng. Ency. of Law,—2d ed.—555; 9 Cyc. 591.) That is the rule where the facts are in dispute, but if the facts are not controverted it is not error for the court to assume the existence of such facts and construe the contract accordingly. In such a case the meaning of the contract may be determined by the court. (Beach on Contracts, sec. 745; Cyc. *supra.*) In this case the court did not construe the contract except as to one question which was covered by the written contract, and that question was not and could not be affected by oral testimony. The contract of April 13, under which the pictures were in the course of completion, expressly provided that the backgrounds should be in two colors for the first 10,000 of each subject, and that subsequent runs of 10,000 of each subject should have four different backgrounds. That proposition was accepted for 10,000 of each subject with the privilege of increasing to 20,000 each, and when the contract of September 7 was entered into relating to the same pictures it was only for 10,000 of each subject. The court did not err in instructing the jury as to that feature of the written contract, which could not be varied by oral testimony.

The declaration consisted of the common counts and four additional counts. The first and second additional counts charged the defendant as purchaser of the pictures, and the third and fourth charged him as guarantor of the

American Soligraph Company. On the trial plaintiff at first claimed the right to recover both upon the guaranty and the original contract, and evidence was offered tending to prove both causes of action, but after closing its case counsel for plaintiff stated that it did not seek to recover from the defendant on the ground that the corporation was not properly organized and that it was relying only upon the contract of guaranty. All evidence except that relating to the guaranty was withdrawn, and this occurred in the absence of the jury. The defendant asked the court to give four instructions informing the jury that the plaintiff could not recover on the common counts nor on the first or second additional count, which charged that the plaintiff sold the pictures to the defendant, or contracted with the defendant for the manufacture or delivery of them, and delivered the pictures, and the defendant thereby became indebted to plaintiff. The court refused to give the instruction. The counts were not faulty but all evidence tending to sustain them was withdrawn, and it would have been proper for the court to have given the instructions. There was no instruction, however, which authorized the plaintiff to recover from defendant as purchaser of the pictures or having contracted for them. The instructions related only to his liability as a guarantor. The third and fourth additional counts stated a cause of action and the evidence and instructions were applicable to them, and we do not think any prejudice to the defendant resulted from the refusal and do not regard it as ground for the reversal of the judgment. *Chicago, Wilmington and Vermilion Coal Co.* v. *Moran,* 210 Ill. 9.

The next complaint is that the court refused to give four instructions asked by defendant, all of which were framed upon the theory that the contract was for the delivery of pictures represented by samples of goods to be delivered or samples submitted, and counsel say they were intended to present to the jury the question whether the 3200 pictures which had been roughed were samples of the pictures to be

delivered. The agreement was to make and deliver pictures then in the course of completion and represented by the proofs in the possession of the defendant, and there was nothing which could be called a sale of pictures by sample, as understood in the law. The 3200 pictures delivered were to be used by canvassing agents as samples of what they would deliver, but Stevens had said that he would have the pictures roughed elsewhere if he wanted it done, and the 3200 were in no sense samples of what plaintiff was to deliver. The court did not err in refusing to give those instructions.

It is insisted that the court erred in giving instructions at the request of plaintiff authorizing a recovery if the pictures were made substantially in accordance with the terms of the contract. The rule of the common law is, that a party suing upon a contract and alleging performance of it can only recover by proving performance in strict accordance with its terms. (9 Cyc. 601.) The equitable rule allowing a recovery where there has been a substantial compliance with the contract, with a deduction for slight departures and unintentional deviations, has been applied to building contracts for reasons peculiar to that class of contracts, (*Keeler* v. *Herr,* 157 Ill. 57; *Shepard* v. *Mills,* 173 id. 223;) but it does not appear to have been extended to contracts like this and where the pictures were refused. In this case the pictures were made in accordance with the contract as we interpret it. The borders were from two to four and one-half inches wide, and the specks alleged to exist in the borders were such as would not be seen without close inspection, and were not due to defects in the plates or printing but were caused by occasional dust particles in the air. The evidence that such specks cannot be avoided was uncontroverted, and it appears that the contract was not only substantially but literally complied with by the plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*