James McMillan, doing business under the firm
name and style of James McMillan and Company,

*v.*

State of Illinois.

*Opinion filed January 21, 1911.*

1. Contracts—*proposals.* Where a proposal is submitted by a
contractor and the same accepted, it is incumbent upon the con-
tractor, in a suit to recover therefor, to show that the article was
furnished in accordance with the proposal.

2. Same—*retention of article.* When the contract fixes the time
within which the purchaser may reject the article, the retention of
the same for a longer period will amount to an acceptance of the
same.

3. Same—*interpretation.* Where there is doubt or uncertainty as
to the proper construction to be given the terms of a contract, re-
course may be had to the interpretation the parties have put
upon it.

W. S. Corbin, for Claimant.

W. H. Stead, Attorney General, for State.

Claimant filed his claim on the 24th day of April,
A. D. 1909, with the Auditor of Public Accounts of
the State of Illinois, for the sum of twenty-six hundred
twenty-five ($2,625.00) dollars, alleged to be due from
the State of Illinois to the claimant to balance account
for eight James McMillan Smokeless Furnaces and
eight sets Whelan Shake and Dumping Grates and
sundry items of repair and material as set forth in
claimant's bill of particulars.    The Honorable W. H.
Stead, Attorney General of the State of Illinois, plead
the general issue to the said claim.

A commission was created by an Act of the General
Assembly of the State of Illinois, entitled "An Act
to provide for the repair of the State Capitol Building
at Springfield, Illinois," and making appropriations
therefor, approved May 18, 1905, in force July 1, 1905,
which said commission consisted of the Governor,
Lieutenant Governor, Secretary of State, Auditor of

Public Accounts, the Attorney General and State Treasurer of the State of Illinois.

Claimant made the following proposal to the said commission, which proposal was accepted, and the said proposal is in the words and figures as follows, to-wit:

"Chicago, October 4, 1906.
W. Carbys Zimmerman,
          State Architect,

Dear Sir:—We propose to equip eight (8) 66'x16' horizontal tubular boilers situated at the State Capitol Power Building, Springfield, Illinois, complete with the James McMillan Smokeless Furnace for the sum of three hundred ($300.00) dollars per boiler on the following conditions:

We will allow you a thirty days trial of these furnaces, and if they do not prevent ninety per cent of the smoke, we will remove them without any cost to you. If after a trial of thirty days these furnaces do prevent ninety per cent of the smoke, we are to receive the above amount mentioned.

We will guarantee these furnaces will cost you nothing for repair for one year; should any repairs be necessary, we will take care of same at our own expense. In looking over the boilers we find the iron door liners are badly burned and also that the grate bars are in very bad condition. We have a special tile door liner made of high grade Pennsylvania fire brick which will stand much better than iron, which we will furnish and set in position and do necessary brick work around same for an additional sum of forty ($40.00) dollars per boiler.

We further propose to furnish and set in place a straight common grate bar with a five inch air space, five feet long and six feet wide, heavy pattern for the sum of seventy-five ($75.00) dollars per boiler, or if you prefer a shaking grate we would furnish and set

in place a Whelan Shaking and Dumping grate for the sum of one hundred and five ($105.00) dollars per boiler.          Very respectfully,

JAMES MCMILLAN & COMPANY.''

No additional conditions were added in the acceptance of the said proposal, nor was there any change in the terms or conditions of the said proposal except, that the said smoke consumers should be placed into one boiler at a time, so as not to shut down the plant. The sum of two hundred twenty-five ($225.00) dollars to balance account for material, appliances and labor performed by claimant with reference to sundry repairs and improvements, not including the said eight McMillan Smokeless Furnaces, has not at any time, so far as the records disclose, been in dispute. It appeared during the oral argument of the said claim that the said sum of two hundred twenty-five ($225.00) dollars had never been disputed, and could have been paid at any time. It does not appear that claimant at any time made any specific request for this particular amount, but that it was presented in the statement which included the twenty-four hundred ($2,400.00) dollars for the said eight McMillan Smokeless Furnaces. It is not established by the evidence that the commission at any time accepted the said McMillan Smoke Consumers, and therefore the item in claimant's bill of particulars which is and has been in dispute is the eight James McMillan Smoke Consumers placed in the horizontal tubular boilers at the State Capitol Power House at Springfield, Illinois, the proposed price being three hundred ($300.00) dollars per smoke consumer, making a total of twenty-four hundred ($2,400.00) dollars in dispute between the said claimant and the State of Illinois.

It is urged by the claimant that the eight smoke consumers complied with the conditions of the said proposal, and that they were accepted by the said repair commission through its alleged agent, James E. Cole. It is not established by the evidence that the

smoke consumers complied with and fulfilled the con-- ditions of the said proposal. We are of the opinion that there has not been any legal acceptance of the said eight smoke consumers by the commission at any time, and the record does not disclose that the said commission in any way directed or attempted to confer any power on the said Cole to accept the said smoke consumers in behalf of the said commission. It appears that in about thirty days after the said smoke consumers had been installed, that they were not working satisfactorily, and that this information was communicated to the claimant, and in fact and legal effect the time for testing the said eight smoke consumers was by mutual and common consent ex- tended and continued indefinitely. It appears from the evidence that the claimant and defendant were to arrange for some subsequent date for the final test of said eight smoke consumers under the conditions of the said proposal.

It is urged that the letter bearing date January 22, 1907, to James McMillan & Company, signed by James E. Cole, Superintendent of Construction, is an accept- ance of the smoke consumers in question. The text of the letter is:

"In reply to yours of January 18, I wish to say that bills for furnaces, etc., must be made out to the State of Illinois, and sent to me for approval.

I wish to say that the consumers are not working as satisfactorily as I expected, but I have not had the time to look into the matter to find out where the trouble lay."

This letter clearly cannot be held to be an accept- ance. In the first paragraph it directs how the bills are to be made out and the bills sent for approval. This does not express or imply that James E. Cole personally was to pass upon the approval or dis- approval of the smoke consumers. In the second par- agraph of the said letter it appears that the smoke

consumers are not working as satisfactorily as expected, and that the superintendent had not had the time to look into the matter and find out where the trouble lay. The burden of proof is upon the claimant to prove that the smoke consumers were in accord with the said proposal, and that they prevented ninety per cent of the smoke as specified in the said proposal. Certain photographs and other evidence is introduced to establish that the smoke consumers did consume ninety per cent of the smoke. No test of any kind, except the ordinary use, occurred within the thirty days and the test that occurred on August 6, 1907, was not a satisfactory or complete test under the said proposal. The smoke consumers to fulfill the requirements of the said proposal should consume ninety per cent of the smoke as fired by the regular fireman employed to fire the boilers in question. That no acceptance had occurred during the first thirty days' trial is apparent from claimant's letter bearing date July 27, 1907, in which a proposal is made to go down to Springfield on August 1, to make a test on the McMillan furnaces located at the State Capitol Power House. It appears from the evidence that the boilers during this test were only carrying a very small load, and that there were a very few lights burning, and that the principal load was an elevator. This we do not consider an adequate test under the said proposal.

It is urged that Mr. Cole has made certain admissions with reference to accepting the consumers in question. This, however, is denied by Mr. Cole and apparently is not well founded. It is sufficient to say that it was not in his province to accept or reject the smoke consumers, but that the approval or disapproval of the smoke consumers under the said proposal was and remained with the repair commission. It was incumbent upon the claimant to ascertain the extent of authority conferred upon James E. Cole by the commission or law.

It is urged that the letter bearing date April 11, 1908, signed by James A. Rose, was an admission of acceptance. This we do not think is the proper interpretation of that letter. It appears from the evidence in a letter written by Governor Charles S. Deneen, that the commission desired a report or certificate from the State Architect regarding the character of the improvements made before the commission considered the matter of approval and payment.

On January 16, 1908, claimant wrote to James E. Cole, Superintendent of Construction, the following letter:

"Chicago, Illinois, January 16, 1908.
Mr. James E. Cole,

Superintendent of Construction,
Supreme Court Building.

Dear Sir:—Some time ago we wrote you in regard to the McMillan Smokeless Furnaces under the boilers at the State Power House, yet we have not heard from you. These furnaces were to be tried in the cold weather. They cannot be tested if they are not in shape, and as the weather is not all right to make such a test we would suggest that we would get down there and make this test at once as agreed upon. Kindly let us hear from you at once in regard to this matter.

Very respectfully,
JAMES McMILLAN & Co."

In the said letter it is established that a new subsequent test had been agreed upon. It appears from the said letter that the test referred to therein should be made in cold weather. It is substantially admitted that the test in August was not a complete or proper test under the said proposal.

It is clearly established that at no time prior to January 16, 1908, were the smoke consumers in question accepted, and that claimant desired to make another test so as to determine whether or not they had fulfilled the contract under the said proposal. It does

not appear that claimant took any steps whatever to make the test just suggested, and we cannot assume that he was prevented from making another test, or that the absence of a test is equivalent to an approval and acceptance of the smoke consumers. The time limit in the said proposal is not the essence of the contract in question, but whether the smoke consumers did consume ninety per cent of the smoke, and fulfill the requirements in the said proposal. Under the said proposal claimant allowed the State of Illinois thirty days' trial of the smoke consumers, and if they did not prevent ninety per cent of the smoke, claimant would remove them without any cost to the State.

*Hyde* v. *Love Bros.*, 63 Ill. App., page 45.

It appears from the evidence that on May 17, 1907, the furnaces were smoking as badly as ever, although the weather was warm, and while the usual workmen were then firing the boilers. The smoke consuming devices consisted of a brick arch built in the furnace.

In a letter bearing date December 18, 1907, the following language appears:

"I am informed by the engineer at the State Power House that the arches installed by you are falling down. I have not had time to look into this matter thoroughly, but he reports practically all of them in the same condition. If I remember rightly your contract calls to keep same in repair for a year, but I do not desire you to do anything in regard to this patching until further orders, as the question is still open in regard to taking these arches out."

This is a letter written to the James McMillan & Company by James E. Cole, Superintendent of Construction.

On March 18, 1907, claimant in a letter to Mr. Cole says:

"We will come down to Springfield, and prove to your entire satisfaction that the McMillan furnaces can and will comply with all the requirements of the contract."

This letter is prior to the letter written to Mr. W. Carbys Zimmerman by James E. Cole, May 17, 1907, in which Mr. Cole states that he has never at any time accepted same, nor had he given McMillan any reason to think that there was any possibility of his accepting same until the smoke consumers had fulfilled the terms of the contract. It also appears from the said letter that the furnaces at the time they were installed appeared to take care of the smoke for a very short time, but after that they were smoking as badly as ever.

It is urged that after the installation of the smoke consumers the heating system at the capitol building was changed and the radiation increased and that more boilers were required in keeping up steam than prior to the installation of said smoke consumers. It also appears from the evidence that the heating system was so changed, that the amount of boiler capacity to keep up steam and power was not materially increased. Mr. Whitney, the electrician, testified that there did not seem to be much difference in the amount of smoke before and after the installation of the smoke consumers. This, and other evidence in the record discloses, that the smoke consumers were not fulfilling the requirements of the contract during the first thirty days.

It appears from the evidence that after the smoke consumers in question were installed, that it required six boilers in the place of four which had been sufficient to furnish steam and power. It is urged that the State kept the furnaces until they were burned out and destroyed. This does not appear to be the proper interpretation of the attitude of the State. It is fully established by the evidence that the defendant was desirous of giving the plaintiff every opportunity to so construct and perfect the smoke consuming devices, so as to fully comply with the terms of the proposal and subsequent representations.

It is urged that when the contract fixes the time within which the purchaser may reject, the retention

of the article for a longer period of time amounts to an acceptance, and thereby makes the purchaser liable for the purchase price. The contention just urged is not supported by the facts in this case, as the acts of claimant and defendant clearly demonstrate, that the first thirty days' trial limit was waived, and the matter of testing the said smoke consumers continued from time to time, with the mutual understanding, that in the future a complete test was to be made and the matter of approval or rejection finally determined. The written proposal was varied with reference to the time limit by subsequent transactions and conversations. It is conceded by claimant that neither Mr. Zimmerman, the State Architect, nor Mr. Cole, Superintendent of Construction, had been made arbiter with power to decide upon the character or quality of the work. The defendant does not appear to have taken the position that a certificate from the State Architect, or the Superintendent of Construction, was a condition precedent to payment, but that the commission desired a report from the State Architect, or the Superintendent, regarding the character of improvements made before considering the matter of approval and payment. It cannot be said that the report requested from the Superintendent of Construction by the commission was unreasonable.

We do not consider the case in question parallel with the case of *McMillan* v. *DeTamble*, 93 Ill. App., page 65. In the said case on page 69, the following language appears: "There was evidence tending strongly to show that defendant made no objection to the furnace during the thirty days' trial of it, which was given; that he did, in fact, accept it, and made no objection to paying for the furnace until long after the expiration of the thirty days; also, that the furnace complied with the conditions mentioned in the contract." Claimant was informed in about thirty days, that the smoke consumers were not working satisfactorily and

had not been, but for a very short time.   This was during the first thirty days' trial, and no acceptance can be assumed to have occurred.

 · · Mr. Cole was asked the following questions (Defendant's evidence, page 9.) : ''Have you any opinion with reference to what per cent of the smoke was prevented by the smoke consumers, if any?''   A.   ''I should say that from twenty to twenty-five per cent reduction of smoke would be a very high estimate.'' Considering, that he was in charge of the construction and unquestionably in a proper position to judge as to the efficiency of the smoke consumers, this estimate by the Superintendent of Construction is significant.

We are of the opinion that claimant under the said proposal and subsequent acts, transactions, conversation and correspondence, contracted and guaranteed to install eight smoke consumers, that would consume ninety per cent of the smoke of the boilers in question, and that the smoke consumers did not fulfill the requirements of the said proposal or subsequent representations and should have been removed by claimant.
'' * * * The meaning of a written contract is ordinarily a question of law for the Court and not one of fact for the jury, but if the construction depends not only upon the meaning of the words employed but upon extrinsic facts and circumstances, or upon the construction which the parties themselves have placed upon the contract, which is to be proved like any other fact, if such facts are controverted, the inference to be drawn is for the jury, and in such a case the whole question as to what the contract was, should be submitted to the jury under proper instructions.''

*Turner* v. *Osgood Art Co.,* 223 Ill., 629, 635.

In consideration of the foregoing, we are of the opinion that claimant should be awarded the sum of two hundred twenty-five ($225.00) dollars, to balance account for items of account referred to herein, and

that the claim of twenty-four hundred ($2,400.00) dollars for the eight smoke consumers in question should be rejected.

Claimant James McMillan is therefore awarded the sum of two hundred twenty-five ($225.00) dollars.