## Mate Niles, Appellant, v. Marshall Field & Company, Appellee.

### Gen. No. 25,047.

1. Pleading, § 389*—*what is effect of plea of general issue.* In an action against a corporation to recover damages for an assault, where defendant's theory is that the one committing the assault was not its servant, such relationship being of the gist of the action is denied by a plea of the general issue.

2. Corporations, § 478*—*when corporation is not liable for acts of police officer.* A special patrolman appointed by the superintendent of police under the authority given by Municipal Code of Chicago and employed and paid by a detective agency, to which he reports and from which he takes his orders, is not an employee of the corporation in the store of which he is stationed and performs detective services under a contract between the corporation and the agency for such services, for which the corporation pays the agency, and the corporation is not liable for an assault committed by the officer in apprehending on its premises one whom he suspects has stolen its property, such assault having been committed without the direction or knowledge of the corporation.

3. Corporations, § 478*—*when evidence is insufficient to show agency of person committing assault.* In an action against a corporation to recover damages for an assault committed by a special patrolman stationed on its premises, evidence *held* not to show cooperation between such patrolman and employees of defendant in committing the assault making defendant liable therefor.

Appeal from the Circuit Court of Cook county; the Hon. Jesse A. Baldwin, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed April 30, 1920.

Morse Ives and H. E. Wynekoop, for appellant.

Landon & Holt, for appellee.

Mr. Presiding Justice Matchett delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The plaintiff appeals from a judgment for defendant entered upon a verdict of a jury. The jury were instructed by the court to find for the defendant at the close of all the evidence.

The declaration of plaintiff alleged that while she was in defendant's store "the defendant then and there assaulted the plaintiff, and seized and laid hold of her and with great force and violence pulled and dragged her about in said building, and threw her into a certain elevator there with great force and violence," etc., to her injury, etc. In a second count it was charged that the defendant had wilfully and wantonly assaulted the plaintiff. The defendant filed a plea of the general issue.

The theory of the plaintiff, as developed by the evidence, was that the alleged assault was made by a house detective in defendant's store who was defendant's servant in that behalf.

The plaintiff testified that on the 4th of September, 1915, as she was about to leave the defendant's store "a man suddenly and violently grabbed me there by the left arm. He did not say anything to me right at the time. He whirled me around violently and started to push me ahead of him toward the elevators. I then said, 'Who are you? What do you want? You don't know me, let me go.' He said, 'I will show you. You will not get away from me. I am an officer, a house detective of Field's. You will not get away from me.'" She further says she was rushed to the elevator and thrown into it. She was then taken to the third floor and an employee named "George" was called and the party seizing her told "George" that plaintiff had stolen a sweater and given it to another woman, that the other woman in the car spoke up and said plaintiff was not the woman who had given her the sweater, whereupon the man at the door of the elevator told the detective he had made a mistake, and to let plaintiff go, which he did.

The theory of the defense is that the house detective who made the arrest of plaintiff was not its servant, that his relationship to the defendant at the time in question was not such as to make the doctrine of *respondeat superior* applicable. The plaintiff not only argues to the contrary but further claims that this defense could not be raised under the general issue. She also contends that the detective was aided and abetted by other servants of the defendant acting within the scope of their employment, and the defendant is therefore liable by reason of the participation of these servants in the assault. We do not think that it was necessary to plead specially that the detective was not the servant of defendant. In the case of *Chicago Union Traction Co. v. Jerka*, 227 Ill. 95, cited by appellant and other cases which have followed that decision, it was held in substance that mere matters of inducement in a declaration must be put in issue by special pleas, and that they are not raised by pleading the general issue. But in this case the relationship of defendant to the house detective who arrested the plaintiff was not mere matter of inducement. It was of the gist of the action and it was therefore denied by the plea of the general issue.

The evidence on this issue is uncontradicted. Section 1921 of the Municipal Code of Chicago is as follows:

"Special patrolmen for special duty: He (the general superintendent of police) shall have power, on the application of any person or persons showing the necessity therefor, to appoint and swear in any additional number of special patrolmen to do special duty at any fixed place within the city, at the charge and expense of the person or persons by whom the application is made, and shall keep a correct list of all persons so appointed. He shall issue a special certificate of appointment to each of said special patrolmen and shall, upon receiving a deposit sufficient to cover the cost thereof, provide them with

suitable badges which shall be worn by them while on duty, and be returned to said general superintendent upon the termination of their appointment.''

The so-called detective, one Rolands, produced his commission which was as follows:

''Appointment of special police, Chicago, May 20, 1904. I hereby appoint Frank Rollins as special police upon the recommendation of Thomas McGuire to serve as such special police officer at premises known as Marshall Field & Co., H. G. Selfridge & Company, Siegel Cooper & Company, Boston Store, Carson, Pirie, Scott & Company, Rothschild & Company, Burley & Company.''

This commission was signed by the superintendent of police.

Rolands further testified that he had been in the police service 21 years during which time he worked at Field's; that he was sworn in as a police officer at Cicero, and was with a detective agency before that; that he was a special police officer in September, 1915, stationed at Marshall Field's retail store at the corner of Washington and State streets; that he reported to Thomas McGuire, the principal of the McGuire & White Detective Agency. ''I did not report my acts and doings to any one in Marshall Field & Company's store and did not take orders from any one there.'' That he received orders as to what to do from the chief of police at the time of Chief O'Neil; that he did general police work in the store and did not do anything else; that he looked after pickpockets and shoplifters which was general police work; that McGuire & White's detective agency paid him for his time; that he did not arrest any one on information from any employee of Field's; that if he received such information he would follow them himself until he saw them steal something; that when he arrested any one he would call up McGuire & White's agency and report to them. This evidence with other

uncontradicted evidence offered tended to show that Rolands was in the employ of the detective agency, was paid by it for his services and that Marshall Field & Company by contract with the agency paid the agency for these detective services in its store, and to such an amount that the detective agency derived profit from the arrangement, and that the agency, by reason thereof, was liable for any acts of said Rolands and controlled his actions.

It is the contention of appellant that if Rolands was not defendant's servant, he, at least, carried on his work with agents and servants of defendant, so as to make defendant liable, or at any rate it was a question for the jury whether Rolands was the servant of the defendant. If there was any evidence from which the jury could reasonably find that Rolands was the employee of defendant and acting within the scope of his employment at the time of plaintiff's arrest then it would be a question for the jury. However there is no contradiction in the evidence bearing on that point. We think this evidence shows Rolands was not the servant of the defendant.

The law applicable to such a state of facts was announced by Judge Baker in a discussion of similar facts in the case of *Adler v. White City Const. Co.,* 147 Ill. App. 20. Upon a review of the authorities it was there held that a defendant corporation was not responsible for acts of policemen committed without the knowledge or direction of any agent or officer of the defendant corporation and that the appointment of the two policemen by the superintendent of police at Chicago (although it was made at the request of the defendant and although defendant paid them for their services as policemen) did not make the policemen the servants of the defendant. *Tolchester Beach Imp. Co. v. Steinmeier,* 72 Md. 313; *Healey v. Lothrop,* 171 Mass. 263; Newell Malicious Prosecutions, sec. 81. The reason for the rule is that a policeman with re-

spect to his official duties is not subject to the order of any other than his official superior. The party whose business is protected by him cannot control him nor discharge him nor require the performance of any duty by him. The authorities are collected in a note to *McKain v. Baltimore & O. R. Co.,* 65 W. Va. 233, 23 L. R. A. (N. S.) 289. See also note to *Moss v. Campbell's Creek R. Co.,* 75 W. Va. 62, 55 L. R. A. (N. S.) 1183.

We think, therefore, under the evidence and the law Rolands was not the servant of the defendant and the doctrine of *respondeat superior* is not applicable to this case. Nor do we think the evidence in this record indicates such co-operation between Rolands and the employees of the defendant as to make defendant liable. It is suggested that this liability might be inferred from the conduct of the elevator man and the superintendent, George Turnow. The evidence of the plaintiff, however, shows that Peterson, the elevator man, did not detain her against her will. On the contrary she testified that she clung to him asking for protection. Nor does her evidence indicate that George Turnow, the superintendent, so participated, for she says that he at once told Rolands to let her go.

We think the court properly directed a verdict and the judgment will be affirmed.

*Affirmed.*

MR. JUSTICES BARNES and GRIDLEY concur.