Rose Komorowski, Plaintiff in Error, v. The Boston Store of Chicago, Defendant in Error.

Gen. No. 34,795.

Opinion filed October 19, 1931. Rehearing denied November 2, 1931.

CORINNE L. RICE and SIMPSON & BAKER, for plaintiff in error.

MOSES, KENNEDY, STEIN & BACHRACH, for defendant in error; HAMILTON MOSES, ALBERT LANGELUTTIG and ARTHUR MAGID, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff by this writ of error asks the reversal of a judgment entered upon the verdict of a jury finding defendant not guilty in an action brought by her to recover damages for an alleged false arrest and imprisonment.

The occurrence of which she complains took place September 23, 1920, and the suit has been in the courts much of the time since then. Upon a prior trial the court directed a verdict for the defendant. In this court we reversed the judgment, holding that the case should have been submitted to the jury, and remanded the cause for a new trial. *Schramko v. Boston Store,* 243 Ill. App. 251. (Plaintiff has since married and the present suit is under her married name.) Upon the last trial the jury found the defendant not guilty. Plaintiff took the case to the Supreme Court upon the theory that the validity of a city ordinance was involved. That court, however, held to the contrary and the cause was transferred to this court. 341 Ill. 126.

As we are of the opinion that there must be another trial we do not narrate the testimony at length. The evidence for the most part is the same as it was when the case was before us the first time.

Plaintiff testified that she went to the jewelry counter of the defendant store and was waited upon by a sales clerk. She bought a bracelet, paying $1.19 for it, and the sales clerk helped to place it upon her wrist. She received a sales slip but inadvertently placed it on the counter and walked away without it; after she had gone a little distance she was approached by Charles E. Sullivan, who accused her of having stolen some jewelry, and against her protest she was taken by him to the sixth floor to the office of Mr. Mangold, the superintendent of defendant. There she was accused of stealing the bracelet. Mangold and Sullivan testified that she admitted this. Plaintiff testified that under coercion she signed a confession without reading it; that Mangold told her that if she would sign it she would not have to go to jail. Both he and Sullivan signed the confession as witnesses. Sullivan then led plaintiff out of the store and told her never to come in again or she would be arrested.

The status of Charles E. Sullivan was in controversy in both trials. He testified that he was employed by the McGuire & White Detective Agency, which paid him his wages, and was assigned to his work by Thomas McGuire, president and general manager of the detective agency; that on the date in question he was performing services or duties as store detective for this agency and was working for no other institution. He was also a special patrolman appointed by the superintendent of police of the City of Chicago by virtue of a city ordinance which gives the Superintendent of Police "on the application of any person or persons showing the necessity therefor, to appoint and swear in any additional number of special patrolmen to do special duty at any fixed place within the city, at the charge and expense of the person or persons by whom the application is made." (Section 1921, Chicago Code.) The ordinance also provides that the

person so appointed as special patrolman shall be subject to the rules and regulations governing the police force of the city and to such special rules and regulations as the general superintendent may make concerning such police patrolmen; that they shall possess all the powers, privileges and duties "of regular police patrolmen, at the places for which they are respectively appointed, and may be removed or discharged from service at any time by the general superintendent, without assigning any cause therefor." (Section 1922, Chicago Code.)

Sullivan was not a regular police officer employed by the City of Chicago, but was a special patrolman appointed by the superintendent of police at the request of and employed by the McGuire & White Detective Agency. A regular city policeman is appointed from an eligible list under civil service rules, receives his compensation from the city and may be discharged only under civil service regulations. Persons appointed as special patrolmen for special services are not in the regular police service of the city. *City of Chicago v. Edwards,* 58 Ill. 252. Although Sullivan was not a regular police officer of the City of Chicago, yet at defendant's request a number of instructions were given predicated upon the assumption that he was such a police officer. A typical instruction is defendant's given instruction number 3, where the jury was told that if it believed that Sullivan in making the arrest "was acting solely in the performance of his duties as a police officer of the City of Chicago," there could be no liability against defendant. Instruction number 4 also refers to Sullivan as "engaged in the performance of his duties as a police officer of the City of Chicago." The same thing occurs in instructions numbers 5, 10, 13, 20, 22, 44, 47, 48, 49 and 50. Such instructions were prejudicial in assuming that Sullivan was a regular police officer of the City of

Chicago. He properly should be described as a special patrolman employed by the McGuire & White Detective Agency as a store detective, and instructions if any as to his status should so describe him. While technically the powers and duties of such a special patrolman are the same as those of a regular police officer, yet an arrest by a regular police officer would have a different aspect from the acts in this respect of an employee of the defendant or of the detective agency working for defendant. In the former case he is in the service of the public generally; in the latter case he is primarily responsible not to the public but to his employer. His continued employment depends upon giving satisfactory service to his employer. The instructions criticized not only ignored this difference, but in effect asserted that no such difference existed.

In this connection it should be mentioned that 39 instructions were given to the jury at defendant's request. To note all the criticism which might be made against many of these instructions would unduly lengthen this opinion. Many of them were highly technical in verbiage and not calculated to be of any assistance whatever to the jury. The practice of giving an excessive number of instructions has been repeatedly condemned. *Daubach v. Drake Hotel Co.,* 243 Ill. App. 298. We heartily agree with the vigorous language in *Adams v. Smith,* 58 Ill. 417, condemning this practice.

Defendant introduced in evidence a written contract between itself and the McGuire & White Detective Agency, dated September 3, 1907, and running for two years. There was evidence that by an oral agreement this contract was continued until 1923, when a new agreement was drawn. This would cover the time of the alleged false arrest. This distinguishes this record from the prior record, where there was no evidence as to what the contract was at this time.

Defendant claims that by reason of this contract it is established that Sullivan was not its servant, but the servant of McGuire & White. If a contract is in writing, complete in itself and unambiguous in its terms, its construction is for the court and not for the jury. *Hartley v. Red Ball Transit Co.,* 344 Ill. 534; *Rosenbaum Bros. v. Devine,* 271 Ill. 354; *Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100.

The instant contract recites, in substance, that the first party (the defendant) is conducting a department store in the City of Chicago and is desirous of employing the second party (McGuire & White Detective Agency) as a detective agency for the purpose of protecting its store, premises, stock of merchandise, and other property, from shoplifters and other thieves and offenders; that the second party shall perform these services by employing two detectives at the store who shall act as detectives from eight o'clock in the morning until six o'clock in the evening of each working day, said detectives devoting all their time and attention to protecting the store from shoplifters and thieves. The first party agrees to pay McGuire & White $10 a day for each working day. It was further agreed that the detectives employed by McGuire & White shall not ''be subject to the order, direction, control or superintendence of said first party, or any of the officers, agents or employees of said first party, in the rendition of said service, but said second party (McGuire & White) shall have the sole and exclusive right to direct, order, control and superintend the conduct and action of said persons so employed by it in the rendition of said service; and the first party does hereby give to the said second party exclusive control and superintendence of all the details of said work and service, with full discretion to act as, in its judgment, it sees fit and proper in connection with all matters arising out of or relating to said work and service; and the said first party does hereby covenant and

agree that it will not in any manner whatsoever interfere with the complete control, direction and supervision by said second party of said service and of the acts and conduct of its employees so used by it in connection with the performance thereof.'' It was further agreed that the second party should have the exclusive right to select and determine the two persons who should render such services as detectives and that they should not be subject to discharge or removal by said first party or any of its officers or agents, and that in the performance of the services the two detectives should not arrest, detain or restrain any person ''except upon his own judgment or the judgment of an officer, agent or employee of said second party.'' The second party also covenanted to hold harmless the first party against any loss or damage that may be sustained or recovered against the first party by reason of any of the acts of agents of the second party.

Standing alone, this contract establishes the employment of Sullivan by the McGuire & White Detective Agency and not by the defendant, and hence in the absence of other circumstances defendant could not be called upon to respond in damages under the doctrine of *respondeat superior*. *Livingston v. Boston Store,* 221 Ill. App. 643; *Niles v. Marshall Field & Co.,* 218 Ill. App. 142, and cases there cited.

However, a third party is not bound by such a contract, and extrinsic facts and circumstances may be put in evidence tending to show the construction which the parties themselves have placed upon the contract, and if such facts are controverted the whole question as to what the contract was should be submitted to the jury under proper instructions. *Turner v. Osgood Art Colortype Co.,* 223 Ill. 629; *Hartley v. Red Ball Transit Co.,* 344 Ill. 534. As we said under a similar point in *Hartley v. Red Ball Transit Co.,* 259 Ill. App. 229:

"We are not holding that the written contract is conclusive. Any act or conduct on the part of a defendant inconsistent with the defense presented is generally admissible in evidence and is proper to be considered by a jury. Even though such evidence may have but a slight bearing upon the issue, it is not thereby rendered incompetent, but only its weight is affected."

There was testimony, some of which was controverted, as to the conduct of Mangold, defendant's superintendent, which was competent as touching upon the question of whether or not defendant through him exercised any control over or took part in the incident. Among other items of evidence was that he had on his desk a pad of typewritten blanks or forms to be used in securing confessions, and one of these plaintiff signed under duress, as she claims; that he told Sullivan to leave the office for a time and then summoned him back to the office and told him to witness plaintiff's signature and to take plaintiff out of the store. Defendant is liable for the wrongful acts, if any, of its superintendent, Mangold, and the jury should determine whether he exercised any control or direction over Sullivan on this occasion.

The rule is that a private corporation is not responsible for the acts of a special police officer or detective when the acts complained of are performed in carrying out his duties as a police officer, but where his movements are actively directed by the corporation who, directly or indirectly, pays for his services, he may in so doing represent the corporation and not the public, in which case the corporation may become liable for his acts. *Zygmuntowicz v. American Steel & Wire Co. of New Jersey,* 240 Mass. 421.

Complaint is made of the rulings on the admissibility of evidence. It was proper for plaintiff to testify as to the truthfulness or untruthfulness of the alleged confession, and she should have been permitted to relate the circumstances under which she signed it.

The court's remark with reference to this alleged confession, ''That is your exhibit. You are bound by your own evidence. You can't impeach your own exhibit,'' directed towards plaintiff's counsel, was prejudicial in its nature as tending to cause the jury to believe that the statement in the alleged confession was true.

The memorandum given by the saleswoman to plaintiff, which she sought to introduce in evidence, should have been admitted.

Other alleged errors may not occur again on the next trial.

Defendant has made certain assignments of cross-errors but they were, in substance, presented upon the former hearing by us and what we said in our first opinion disposes of them. Other assignments of cross-error do not seem to be argued in defendant's brief.

For the reasons above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and MATCHETT, J., concur.