ROSENBAUM BROS., Plaintiff in Error, *vs.* JOHN F. DEVINE, Admr., Defendant in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 4, 1916.*

1. CONTRACTS—*construction of written contract is a matter of law.* Where a contract is in writing its construction is a matter of law, and the relation of the parties is to be determined by the terms of the contract.

2. SAME—*when acts of parties cannot be proved to show their interpretation of a contract.* In cases where, from the words used, doubt arises as to the meaning of a written contract, the acts of the parties may be proved as tending to show their interpretation of the contract, but if there is no ambiguity in the contract such evidence is not admissible.

3. SAME—*when a construction company is an independent contractor.* A construction company which agrees to construct a concrete tank of certain dimensions at not to exceed a specified sum, which shall include its commission of six per cent, and to superintend the work daily until completed, is an independent contractor, notwithstanding it is agreed that the owner is to pay all bills for material and labor on vouchers presented, and that any saving in cost of material, as shown by the construction company's estimates, shall accrue to the owner, where there is nothing in the contract requiring or permitting the owner to furnish the material and labor or have any control over such matters.

4. NEGLIGENCE—*owner is not liable for negligence of independent contractor.* The owner of land on which a building is being erected for him by an independent contractor is not liable in damages to a servant of the contractor for an injury due to the contractor's negligence.

FARMER, C. J., dissenting.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

MILLER, GORHAM & WALES, GILBERT NOXON, and W. G. SHOCKEY, for plaintiff in error.

JAMES C. MCSHANE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Rosenbaum Bros. is a corporation and in 1910 was engaged in the grain business, having an elevator in the city of Chicago. The Seckner Company was a corporation engaged in the re-inforced concrete construction business. Rosenbaum Bros. determined to construct a concrete tank for the storage of grain on the premises adjoining its elevator and contracted with the Seckner Company to build it. When the tank was nearly completed the roof collapsed, and John Gambon, who was working upon it, was killed. The defendant in error, as administrator, brought suit against Rosenbaum Bros. for negligently causing Gambon's death and recovered a judgment for $8000, which the Appellate Court affirmed. By writ of *certiorari* the record has been brought before us for review.

The contract between Rosenbaum Bros. and the Seckner Company is contained in the following correspondence had between them on September 1, 1910:

"CHICAGO, ILL., *September 1st, 1910.*
"*Rosenbaum Bros., Chicago, Ill.*

"GENTLEMEN—We, the undersigned, agree to build one 40 by 50 concrete tank at plant, Eighty-seventh street and Stewart avenue, complete, for the sum of four thousand twenty-eight ($4028) dollars; or you pay the bills and give us six (6) per cent of cost, and we to assist in buying when we can be of benefit. The figures are as follows, as we have estimated. If 42 feet in diameter add five per cent:

| | |
|---|---:|
| Excavation | $250 |
| Gravel | 431 |
| Cement | 448 |
| Iron | 558 |
| Forms | 479 |
| Jacks | 54 |
| Roof | 56 |
| Hoist | 245 |
| Labor | 1279 |
| | $3800 |

"Very respectfully,
THE SECKNER COMPANY,
C. M. Seckner, *President.*"

"CHICAGO, ILL., *Sept. 1st, 1910.*
*"The Seckner Company, Chicago.*

"GENTLEMEN—We hereby accept your proposition of this date to build one concrete tank 40 by 50 feet at our plant at Eighty-seventh street and Stewart avenue at a sum not to exceed $4028, which includes your commission of six per cent. We are to pay all bills, and vouchers must be presented to us for all material and labor. It is also understood that if there is any saving in the cost of material as shown by your estimates, such saving accrues to us. The work is to be superintended by your Mr. C. M. Seckner, who will watch the work daily until completed. It is understood that the above figures are on a basis of a 40-foot tank, and if it is found practical to erect a 42-foot tank the above estimate will be increased five per cent.

"Kindly acknowledge receipt, and oblige

"Yours truly,

ROSENBAUM BROS.,

By William Renstrom.

"We will pay you commission on the figures in your estimate, so if there is any reduction in price of material or less cost of labor it will not affect your commission.

WILLIAM RENSTROM."

"CHICAGO, ILL., *Sept. 1st, 1910.*
*"Rosenbaum Bros., 77 Board of Trade.*

"GENTLEMEN—We are in receipt of your acknowledgment of our proposition and will begin work at once.

"Respectfully yours,

THE SECKNER COMPANY,

Per C. M. S."

The Seckner Company immediately proceeded to have plans drawn for the tank and submitted them to the city building department for the purpose of getting a permit from the city for the building of the tank. The building department required the plans to be altered so as to require two two-inch truss rods under each of the two I-beams upon which the roof rested instead of one one-and-a-half-inch rod, as the original plans provided. The permit was issued and the construction proceeded, but instead of the two two-inch truss rods required by the plans approved by the building department only one-and-a-half-inch rod was used as required by the original plans, and in consequence of the insufficient support of the roof it fell.

No claim is made that the decedent's death was not negligently caused, but the plaintiff in error insists that the Seckner Company was an independent contractor, for whose acts the plaintiff in error was not liable. The court, however, instructed the jury that the "Seckner Company was not an independent contractor but was merely defendant's agent in what it (the Seckner Company) did or omitted to do in and about providing the materials used in the construction of the tank and roof," and the plaintiff in error has assigned the giving of this instruction as error.

Whether the plaintiff in error is liable for the negligence which resulted in the decedent's death depends on the relation between it and the Seckner Company. If the Seckner Company was an independent contractor the plaintiff in error was not liable for its negligence, but if the relation between the two was that of master and servant then the plaintiff in error was liable for the negligence which resulted in the death. The parties are agreed that the following quotation from Jaggard on Torts (sec. 73) is a correct statement of the law: "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." Their disagreement arises over the question of providing the material for the construction of the tank. The defendant in error insists that the Seckner Company did not contract to provide the material for the construction of the tank and as to that was not an independent contractor.

Much evidence was introduced to show the acts of the parties in regard to the buying of the material, for the purpose, as stated, of showing the interpretation placed on the contract by the parties. The contract being in writing its construction is a matter of law and the relation of the parties is to be determined by the terms of the contract. (*Pioneer Construction Co.* v. *Hansen,* 176 Ill. 100.) In cases where, from the words used, doubt arises as to the meaning

of a contract the acts of the parties may be taken into consideration to aid the court in ascertaining the meaning intended, by showing the interpretation placed upon the contract by the parties themselves. (*Finch* v. *Theiss,* 267 Ill. 65.) In the view we take of this contract, however, there is no ambiguity and the evidence was not admissible. The only part of the correspondence really essential to be considered is the second of the letters above quoted. The third is merely an acceptance of the proposed terms and the first is eliminated by the substitution of the second. While the letter of Rosenbaum Bros. purports to be an acceptance of the proposition contained in the first letter of the Seckner Company it is really a rejection of that proposition. The first letter contained two propositions: one to build the tank for $4028, the other to build the tank for six per cent above the cost of the material and labor. Neither of these propositions was accepted, but the response of Rosenbaum Bros. amounted to a rejection of both and the offering of a third proposition. By this letter and its acceptance the Seckner Company agreed that it would build a concrete tank 40 by 50 feet for a sum not to exceed $4028, and that the work should be superintended by C. M. Seckner, the president of the Seckner Company, personally, who should watch the work daily. The plaintiff in error agreed to pay for the labor and material used in the construction upon bills and vouchers therefor presented to it and a commission to $228 to the Seckner Company, the whole, however, not to exceed $4028. The Seckner Company, by its agreement to build the tank, became bound to furnish the material and labor necessary for that purpose to the same extent as if it had expressly agreed to do so. It could not build the tank without both material and labor, and would necessarily be required to provide them unless the contract required them to be furnished and provided by the plaintiff in error. The contract contains no such requirement. The plaintiff in error agreed only to pay for the material and

labor upon bills and vouchers presented to it. It was under no more obligation and had no more right to buy and provide the material than it had to hire the labor, and if by the contract the Seckner Company was not required to provide the labor or material, plaintiff in error contracted for nothing but the personal superintendence of C. M. Seckner. The contract contained no specifications for the tank except that it should be of concrete, 40 feet in diameter and 50 feet high. It was implied that it should be fit for the purpose for which it was constructed. The Seckner Company was bound to construct such a tank. It was bound to furnish for it all the necessary material of a suitable kind and the necessary labor. It was not even obliged to consult the plaintiff in error in regard to whom it should employ, from whom it should purchase material, the kind of material it should purchase or the prices it should pay. If it had built the tank ignoring the plaintiff in error during the progress of the work the latter would still have been liable to pay the Seckner Company $228 on the completion of the work and to pay the bills for work and material upon proper vouchers being presented to it. The payment for the material by the plaintiff in error was merely a method of paying the contract price. It would be unreasonable to hold that by this contract the plantiff in error intended to reserve to itself the control of the material which should go into the tank.. The Seckner Company was engaged in re-inforced concrete construction. It would be presumed that through its officers and agents it knew what would be required in the performance of the contract with plaintiff in error. Plaintiff in error was engaged in the grain business. There is no presumption that anybody connected with it knew anything about concrete construction or what material would be necessary or desirable to be used in the performance of the contract. There was no reason why it should desire to provide or purchase the material

itself, and by a reasonable construction of this contract it did not do so.

The court erred in giving the instruction that the Seckner Company was not an independent contractor, and its judgment, and the judgment of the Appellate Court affirming it, will be reversed and the cause will be remanded to the superior court of Cook county.

*Reversed and remanded.*

Mr. CHIEF JUSTICE FARMER, dissenting.