## Frank H. Hayes, Administrator, Appellee, v. Chicago, Ottawa & Peoria Railway Company and Andrew Ward and Joseph Orr, copartners, trading as Ward & Orr, Appellants.

### Gen. No. 6,185.

1. MASTER AND SERVANT, § 856*—*when relation of independent contractor exists.* The right under a construction contract of the party for whom the construction is to be done to forfeit or abrogate the contract does not create the relation of master and servant between the parties, nor the right under such contract of such party to exercise supervisory control over the character, quality and quantity of the work change an independent contractor into such party's servant.

2. MASTER AND SERVANT, § 857*—*when relation of independent contractor is not affected by control of work.* Where a construction contract taken as a whole showed there was no intention that the party for whom the work was to be done should have any control over the contractor's individual employees or the details of the work, *held* that a provision in the contract that the contractor should carry on the work in such manner and at such time and place as such party should direct would not take from the contractor the right to select, direct and discharge his own men, and would not militate against his independence as a contractor.

3. MASTER AND SERVANT, § 856*—*when subcontractor is an independent contractor.* Where a contract for the construction of a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

railroad provided that the contractor should carry on the work in such manner and at such time and place as the railroad company should direct, and that all subcontracts should be upon the same form, terms and conditions as the original contract, *held*, in an action against the company, the original contractor and a subcontractor for blasting work to recover damages for the death of a party by reason of alleged negligence in such blasting, that the subcontractor was an independent contractor, and neither the company nor the original contractor would be liable for negligence by the subcontractor's employees.

Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed August 10, 1916. Rehearing denied October 5, 1916.

DUNCAN & O'CONOR, FRANK M. COX and R. J. FELLINGHAM, for appellants.

J. W. RAUSCH, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This action resulted from the death of William Youngren, who was struck and fatally injured by a stump which was blasted out of a borrow pit on the right of way of the Chicago, Ottawa & Peoria Railway Company at a point between the City of Morris and the Village of Seneca. The suit as originally brought was by Frank H. Hayes, as administrator of the estate of William Youngren, and against the Chicago, Ottawa & Peoria Railway Company and E. S. McMillan; but afterwards the Chicago, Rock Island & Pacific Railway Company and Ward & Orr were also made defendants, and two additional counts to the declaration were filed, which contain the charges of negligence upon which the case was tried. No service was had upon the defendant E. S. McMillan.

At the time of his injury Youngren was looking

474    APPELLATE COURTS OF ILLINOIS.

Hayes v. Chicago, Ottawa & Peoria Ry. Co. et al., 203 Ill. App. 472.

after the safety and repair of telegraph wires, which were strung on poles located on the right of way of the Chicago, Rock Island & Pacific Railway Company, and adjacent to the point where blasting was carried on.

The first of the two additional counts charges that the Chicago, Ottawa & Peoria Railway Company was possessed of a certain right of way extending from the City of Ottawa to the Village of Crotty (also known as Seneca) and the Chicago, Ottawa & Peoria Railway Company and Andrew Ward and Joseph Orr, copartners as Ward & Orr, and E. S. McMillan, were, on the 17th of October, 1909, engaged in constructing a right of way roadbed; and, in order to carry on said business, the parties defendant owned, were possessed of and used ordinary drills and high and dangerous explosive powders and dynamite in blasting stumps, rocks, stone and other material; and that the Chicago, Rock Island & Pacific Railway Company on the date mentioned, owned, possessed and controlled a certain railway which ran contiguous to and parallel with the roadbed and right of way of the Chicago, Ottawa & Peoria Railway Company, and that the deceased, William Youngren, on the date mentioned, was in the employ of all of the defendants, and while in such employ was rightfully in and upon the right of way and roadbed of the Chicago, Ottawa & Peoria Railway Company; that the defendants used great quantities of dynamite and that in the ordinary use of the same, when exploded and discharged, great quantities of stumps, rocks, stone and other debris would be discharged and fly in all directions, all of which was well known to the defendants; that it was the duty of the defendants to afford and provide deceased with a safe place while he was in their employ where he might safely discharge his work, and that it was the duty of the Chicago, Rock Island & Pacific Railway Company to warn and instruct him of the dangerous and perilous position in

which he was placed under its orders and directions, and that it was the duty of the Chicago, Ottawa & Peoria Railway Company and of Andrew Ward and Joseph Orr, and E. S. McMillan, to use reasonable care and caution to warn the deceased, who might then be in a position to be injured by the explosion of dynamite, that the explosion was about to take place; and further avers that while the deceased was in the exercise of due care for his own safety in discharging the duties imposed upon him by the defendants, without knowledge, or means of knowledge, that an explosion was about to occur, and in a position where the defendants knew he was likely to be injured, without warning him that an explosion was about to take place, or giving him sufficient time to escape to a place of safety, the defendants carelessly and negligently exploded a large amount of dynamite, towit, twenty-five pounds, which explosion caused rocks, stumps, etc., to strike and injure the deceased with such force that he was killed.

The particular negligence charged in the second additional count of the declaration is that, in the prosecution of the work mentioned, an unnecessary amount of dynamite, towit, thirty-five pounds, was used by the defendants, and that the deceased, while engrossed in his work and without any knowledge, or means of knowledge, that a great and unusual amount of dynamite was about to be used, the defendants without warning the deceased of the great and unusual amount of dynamite to be used, and without giving him an opportunity, before exploding the dynamite, to get to a place of safety, carelessly and negligently exploded said dynamite, and thereby the deceased was struck and killed.

The proof shows that the Chicago, Ottawa & Peoria Railway Company during the summer and fall of the year 1909 was engaged in building a line of railroad

476 APPELLATE COURTS OF ILLINOIS.

Hayes v. Chicago, Ottawa & Peoria Ry. Co. et al., 203 Ill. App. 472.

to be extended from Seneca, in LaSalle county, to Morris, in Grundy county; that the Central Illinois Construction Company, which for the purposes of this case is admitted to be the same company as the Chicago, Ottawa & Peoria Railway Company, let contracts for grading on the right of way for the purpose of laying the ties and railroad track on this extension; that on or about the 1st of June, 1909, this company entered into a written contract with Andrew Ward and Joseph Orr, as copartners, for grading the roadbed preparatory to laying the superstructure, the work to be finished in the best and most workmanlike manner and in conformity with the certain specifications and conditions annexed to the contract, and expressly made a part thereof. Ward & Orr sublet part of their contract to E. S. McMillan, which part was the grading of a roadbed for a distance of 3,300 feet between Seneca and Morris, and it was on this part of the right of way which McMillan was constructing that the deceased received the injuries from which he died.

The original contract awarded to Ward & Orr contained the provision that all subcontracts should be written on forms identical in terms and provisions with the original contract, and that a duplicate and original of such subcontract, properly executed by the parties, should be delivered to the chief engineer of the company after his written assent thereto had been secured; and it also contained the provision that the contract should not be assigned, nor any portion of the work subcontracted, without the written consent of the chief engineer of the company. The evidence does not show that in letting the subcontract to McMillan these provisions in the original contract were complied with; but the subcontractor was performing his work under a verbal contract with Ward & Orr and with the knowledge, acquiescence and consent of the construction company, and it must be assumed from the

evidence that the work performed by McMillan was to be performed on the basis of and in accordance with the terms and provisions of the original contract between the construction company and Ward & Orr.

The case was tried by jury, and at the conclusion of the plaintiff's evidence the court directed a verdict in favor of the Chicago, Rock Island & Pacific Railway Company, then the case was afterwards submitted to the jury on the question of the liability of the appellants, the Chicago, Ottawa & Peoria Railway Company, and Andrew Ward and Joseph Orr. The jury returned a verdict in favor of the appellee for $3,500 against both of the appellants, and a judgment was rendered on the verdict, from which judgment this appeal is prosecuted.

Various questions of law and fact are raised on this appeal. But the controlling question upon which all other questions of liability depend is whether or not the defendant, E. S. McMillan, in carrying out his contract, was an independent contractor. If he was, then in this action he alone would be liable for the negligence of his employees.

It is insisted by appellee that neither McMillan nor Ward & Orr were independent contractors, but that certain terms and provisions in the original contract, which they were carrying into effect, made them so dependent upon and subservient to the Chicago, Ottawa & Peoria Railway Company that the doctrine of *respondeat superior* applies, and that therefore the railway company is liable as master for the negligence charged in the declaration. The particular terms of the original contract which appellee contends transformed Ward & Orr and E. S. McMillan from independent contractors into servants of the railway company are specified as follows, namely: The clause which makes time the essence of the contract; the clause which provides that the contractor will carry on and prosecute the work in such manner, at such time,

and at such places or points, as the chief engineer of the company shall direct, and will complete and prepare for the superstructure any portion of the work that may be required by the chief engineer of the company; also the clause which forbids the subcontracting of any part of the work without first obtaining the written consent of the engineer; and the clause that all subcontracts must be written on forms identical with the original contract, and a duplicate and original subcontract be furnished to the engineer; the clause which provides that the contractor shall remain responsible to the company for the proper performance of the work, notwithstanding any subcontracts; the clause which provides that such engineer may, on ten days' written notice, suspend operations, reduce the working force from time to time, at any particular point or points, or upon the whole work, such suspended work to be again resumed, either in whole or in part as the chief engineer of the company may think proper, and upon receipt of three days' written notice from the chief engineer of the company that the suspended operations are to be resumed; and the clause that requires that the contractor shall within three days resume work upon the contract and diligently carry on the same; and the clause whereby the engineer may forfeit the contract for imperfect work and eject the contractor from the works using such force as may be deemed necessary for the purpose; the clause by which the company shall also have the right, upon forfeiture of the contract, to employ such force and means as in the judgment of its engineer shall be necessary to complete the work in the manner and within the time provided for in the contract, and that the cost and expense thereof shall be paid by the contractor, and that the company may use in completing such work not only the horses and mules, machinery and other plate and materials provided on behalf of

the company, but also such as may have been or may
be provided by or on behalf of such contractor; also
the clause by which the company has the right to stop
the work contracted for and cancel the entire contract
by giving ten days' written notice; and the clause by
which the company is given power to cancel and annul
the contract on failure of the contractor to comply
with the provisions of the contract, and in such event
that the contractor shall have no claim or demand
whatever against the company for damages, or for
compensation; and the clause by which it is agreed
that the chief engineer of the company shall be consti-
tuted and appointed an umpire to finally settle all
questions in case of dispute or misunderstanding be-
tween the parties in relation to any of the stipulations
and provisions contained in the contract, and of the
specifications annexed, and of the plans, profile and
drawings relating thereto, or in the matter of the per-
formance of the contract; and finally the clause by
which it is agreed that the chief engineer shall have
power to appoint the necessary assistant engineers
and other agents who shall possess the same power as
the chief engineer, in reference to the contract.

It is apparent that none of the provisions referred
to interfere with the independence of the contractor or
subcontractor while actually carrying into effect the
contract, in the employment of the men or the means
by which the contractor or subcontractor might see fit
to accomplish the results provided for by the contract.
Special emphasis is laid upon the reservations in the
contract by which it is agreed that the company shall
have the right to limit the number of men to be
employed and the time and place and manner of doing
the work, and the right of the company to forfeit the
contract for imperfect work, or abrogate it entirely
upon notice. It is clear, however, that the right to
forfeit or abrogate the contract did not create the re-

480    Appellate Courts of Illinois.

Hayes v. Chicago, Ottawa & Peoria Ry. Co. et al., 203 Ill. App. 472.

lation of master and servant between the parties; nor does the right to exercise a supervisory control over the character, quality and quantity of work change an independent contractor into a servant of the other party to the contract. (*Foster v. City of Chicago,* 197 Ill. 264.)

The stipulation in the contract that the contractor will carry on and prosecute the work in such manner at such times and at such points or places as the chief engineer of the construction company shall direct, and will complete and prepare for the superstructure any portion of the work that may be required by the chief engineer, must be construed in connection with all the other provisions of the contract to arrive at its meaning, and when so construed it is apparent that it has reference to the work of the contractor as a whole, and is not intended to give any control to the company over the individual employees of the contractor; nor does it give the construction company any control over the details of the work to be done by the contractor; nor the means, mechanical or otherwise, by which the work may be accomplished. There is nothing in this provision which takes from the contractor the right to select his own men and to direct their labors and to discharge them if negligent in the performance of their work; and hence it does not militate against his independence as a contractor. (*Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100.)

What the contract contemplated in giving the right of direction and supervision to the chief engineer of the company was to effect the kind of grading which would result from carrying out the contract in question with reference to its being done in the best and most workmanlike manner and according to the specifications designed for the work, such work to be taken as a substantive whole. The grubbing of stumps was incidental to the grading to be accomplished; and even

Hayes v. Chicago, Ottawa & Peoria Ry. Co. et al., 203 Ill. App. 472.

if it may be assumed that the construction company, under the clause referred to, could have prevented the grubbing by blasting and could have compelled the substitution of other means, yet it must be remembered that it is not the blasting as such, which is complained of, in the declaration, but certain specified negligence which the appellants are alleged to have been guilty of in connection with such blasting. It is clear, therefore, that the men engaged in the blasting were the employees of the subcontractor and under his sole control, and that the means employed by them in the grubbing were under the sole control of the subcontractor. Neither Ward & Orr nor the railway company had any control over the kind of men to be employed or the conduct of the men employed in the work of blasting. They were employed by McMillan for that purpose and his employees only. McMillan under his contract was bound to furnish his own labor and such labor was under his sole control; he must, therefore, be regarded as an independent contractor. (*Rosenbaum Bros. v. Devine,* 271 Ill. 354.)

It is clear that neither the Chicago, Ottawa & Peoria Railway Company nor Ward & Orr could be legally liable for negligence of McMillan's employees. The judgment in this case against the appellants is therefore erroneous and should be reversed.

*Judgment reversed and cause remanded.*

ADDITIONAL OPINION ON REHEARING.

PER CURIAM: In his petition for a rehearing, appellee asks that if we deny the rehearing we so modify the judgment as to reverse the judgment without remanding the cause, so that he may have an opportunity to remove the cause to the Supreme Court, as McMillan is a bankrupt and appellee does not desire judgment against him. Accordingly the rehearing is denied but our former judgment is so modified as to reverse the judgment of the court below with the following finding of facts:

We find that the death of plaintiff's intestate was caused by the acts of employees of E. S. McMillan, and not of the other defendants, and that McMillan was an independent contractor and that the other defendants are not responsible for his acts.