(No. 12948.—Judgment reversed.)

Ernest LaMay, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Ellen Duffy, Admx. Defendant in Error.)

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. Workmen's compensation—*terms of written contract determine the relation of the parties.* The terms of a written contract determine the question whether the relation between the parties is that of master and servant or owner and independent contractor.

2. Same—*when operator of saw-mill is independent contractor.* Where the owner of a portable saw-mill enters into a written contract with one of his former employees by which such employee agrees to operate the mill, furnish all labor and minor repairs and cut the lumber for a certain sum per thousand feet the employee becomes an independent contractor, and former employees of the owner of the mill who remain with and are paid by the operator are his employees and not those of the owner.

Writ of Error to the Circuit Court of Peoria county; the Hon. John M. Niehaus, Judge, presiding.

Hunter, Page & Kavanaugh, Russell B. James, Andrew C. Wylie, and Hans L. Howard, for plaintiff in error.

McRoberts & Morgan, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

Ellen Duffy, as administratrix of the estate of Cecil Duffy, deceased, filed a claim under the Workmen's Compensation act against Ernest LaMay, plaintiff in error, for the death of her husband, who was killed while cutting down trees which were being sawed into lumber by a portable sawmill on the farm on which the timber grew. Compensation was awarded by the Industrial Commission and the award was sustained on review by the circuit court.

Plaintiff in error was a farmer, living near Monica, in Peoria county. He had also been operating the movable sawmill some time previous to the accident and had employed the deceased, Duffy, in connection with that work. He had entered into a contract with Emily E. Elliott to cut and saw into lumber a number of trees on her farm. James Reed was also employed by him in connection with the work of this portable sawmill. On December 24, 1917, plaintiff in error and Reed entered into a contract, signed by both of them, which provided, in part, as follows:

"Whereas LaMay now has one steam engine, one corn-sheller and one water tank used in corn-shelling business, and one steam engine, one lumber saw and one log outfit now set in timber of Miss Emily Elliott, south of Monica, Illinois. It is understood and agreed that James Reed shall go ahead with work of corn-shelling for people who desire same in the territory heretofore handled by Ernest LaMay, and that Reed is to furnish all labor and all repairs when there is no one article to buy costing more than $5. It is also understood and agreed that Reed shall continue to take trees down and cut into lumber as requested by LaMay and his customers, Reed to furnish all repairs when

there is no one article to buy that costs more than $5. On corn-shelling, LaMay shall pay to Reed * * * and for logging and sawing into lumber the sum of $11 per thousand feet. It is further understood and agreed that Reed shall furnish oils needed for both rigs and shall keep rigs in good ordinary repair, the same as when taken by him, providing only articles costing more than $5 shall be purchased by LaMay. * * * It is further agreed that this contract shall end at close of business on March 31, 1918."

After this contract was executed Duffy continued to work under Reed the same as he had been working for LaMay before the contract was signed. Reed testified that "Duffy was working there when I leased the mill and I just took him over." Reed paid him his wages and directed his work and told him of the lease of the mill from LaMay. After the date of this contract, December 24, 1917, plaintiff in error did not give this work any personal attention, except that occasionally he went to the Elliott farm to tell Reed about orders for lumber which had been received. Pursuant to this contract plaintiff in error paid Reed each Saturday $11 per thousand feet for the lumber cut that week, and out of this money Reed paid his employees, including the deceased. Duffy was killed on January 31 while engaged with another man in cutting down trees with a cross-cut saw, one of the trees falling on him. He had not been engaged directly in sawing lumber with the circular saw for two or three days. The evidence tends strongly to show that Reed controlled the conduct of the work and the workmen, including deceased, absolutely, in all details.

Counsel for defendant in error refer to certain of Reed's testimony which they argue tends to show that LaMay always had the power to hire and discharge, and argue that therefore Duffy was under plaintiff in error's control. We are of the opinion that the question as to whether Reed was an independent contractor in the work of cutting these trees must be decided from the written contract. But con-

ceding for the purposes of this case that the oral testimony was competent to assist in construing the written contract, we think a fair reading of that testimony shows that LaMay had no control over the men whom Reed had working for him in this work. The most that can be said of Reed's testimony on this point is that LaMay might have had some influence in getting Reed to decide who was to be employed or who was to be discharged, but it is clear from the oral testimony, as well as from the written contract, that there was no legal obligation on the part of Reed to consult La-May about hiring or discharging the employees. On the contrary, the whole tenor of the written contract, and of oral testimony as well, is that the contract was one of lessee and lessor and that Reed had entire charge of the details of the work, and that plaintiff in error was only interested in getting and disposing of the lumber. "An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished." (2 Thompson on Negligence, sec. 22, p. 899; see, also, *Messmer* v. *Bell & Coggeshall Co.* (Ky.) 19 Ann. Cas. 1, and authorities cited in note.) Under the reasoning of this court in *Meredosia Levee and Drainage District* v. *Industrial Com.* 285 Ill. 68, *Foster* v. *Wadsworth-Howland Co.* 168 id. 514, and *Bristol & Gale Co.* v. *Industrial Com.* (*ante*, p. 16,) Reed was clearly an independent contractor. This conclusion is in accord with the great weight of authority in other jurisdictions. This being so, it is clear that the award of the Industrial Commission and the judgment of the circuit court cannot be sustained.

In view of the fact that the award of the Industrial Commission must be set aside it is unnecessary to consider the questions whether the deceased was doing work of an extra-hazardous character or whether he was engaged in an agricultural employment.

The judgment will be reversed.    *Judgment reversed.*