(No. 20668.—

CATHERINE HARTLEY, Plaintiff in Error, *vs.* THE RED BALL
TRANSIT COMPANY, Defendant in Error.

*Opinion filed June 18, 1931.*

Philip Rosenthal, (Stuart B. Krohn, of counsel,) for plaintiff in error.

CHURCH, HAFT, ROBERTSON & CROWE, (BURT A. CROWE, of counsel,) for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Catherine Hartley, (hereinafter called plaintiff,) brought suit in the superior court of Cook county against defendant in error, the Red Ball Transit Company, (hereinafter called defendant,) to recover damages for personal injuries sustained by her. A jury trial was had, resulting in a verdict for $65,000, and judgment was entered thereon. Upon review the Appellate Court for the First District reversed the judgment and remanded the cause for a new trial. Following a denial of the petition for rehearing plaintiff filed a motion asking the Appellate Court to set aside the order reversing the judgment and remanding the cause and to enter an order reversing without remanding, in order that she might present to the Supreme Court for review the questions passed upon by the Appellate Court. The motion was supported by an affidavit made by plaintiff's attorney, in which he stated that upon any future trial of the cause plaintiff would be unable to proceed any differently or produce any different evidence upon the question of agency but that she would be compelled to rely upon the same evidence, both documentary and oral, and that the exact situation which arose on the trial below, both as to procedure and submission to the jury of the evidence in question, would present itself again upon any number of future trials. Thereupon the Appellate Court entered such order. The cause is here on *certiorari*.

On August 12, 1926, at 7:30 A. M., while crossing Clark street, a north and south street, in Chicago, on the south cross-walk on Wilson avenue, an east and west street, plaintiff was struck and knocked down by a moving van truck about thirty feet long and six and one-half feet wide, having thereon in large letters, "Move the Red Ball Way—

Bonded Carriers—Red Ball Transit Company—Branches in Principal Cities—Largest Long Distance Household Distance Movers in America—Million Dollar Movers." In one corner, in much smaller letters, were the words, "Thomas Burke, Owner." She sustained severe injuries, for which the recovery was had.

The first count of plaintiff's declaration, after the necessary inducements, charged defendant, "through its agent, so negligently and carelessly operated and propelled its said motor vehicle or motor truck that by and through its negligence and carelessness it caused its said automobile to run into, against and upon the plaintiff," etc. The second count, based upon the same inducements, charged that defendant "operated and propelled its said motor vehicle at said time with a willful and wanton disregard of the rights of others who might lawfully be on said intersection at said time." The third count, based upon a city ordinance making Wilson avenue a "through" or "stop" street, charged that defendant "carelessly and negligently and in violation of said ordinance failed to come to a full stop before entering or crossing Wilson avenue at the place aforesaid, resulting in the injury of plaintiff." The fourth count charged a willful and wanton violation of the same ordinance with reference to "through" or "stop" streets as that made the basis of the third count, resulting in a willful and wanton infliction of injuries to the plaintiff. The defendant filed the plea of the general issue to plaintiff's declaration and also two special pleas. The first special plea was to the effect that the "defendant did not own, possess, operate, manage or control the automobile alleged by plaintiff in her declaration." The second special plea alleged that "the person operating the automobile was not the agent or servant of the defendant nor under any supervision, control or subject to any orders of this defendant."

The evidence shows that at the time of the accident plaintiff was on her way to a wedding, and that upon reach-

ing the intersection she walked east on the cross-walk to the middle of the street, or the space between the two car tracks on Clark street, at a rate of about two miles an hour, the accident occurring under circumstances which warranted the jury in their finding, upon a special interrogatory submitted to them by the court, that the automobile in question driven by Thomas Burke willfully and wantonly ran into and against the plaintiff. No motion was made in the trial court to set aside this finding and no mention thereof appears to have been made in the motion for a new trial or assignments of errors and it will be assumed that the jury's finding in this regard was correct.

It is contended by defendant that it is not liable for damages sustained by plaintiff for the reason that the driver of the truck whose negligence caused plaintiff's injuries was not its servant or employee but was an independent contractor. An independent contractor is one who renders service in the course of an occupation representing the will of the person for whom the work is done only as to the result of the work and not as to the means by which it is accomplished, (*Besse* v. *Industrial Com.* 336 Ill. 283,) and is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result. (*Rosenbaum Bros.* v. *Devine,* 271 Ill. 354.) The rule of *respondeat superior* does not apply if the party employed to do the work in the course of which the injury occurs is a contractor pursuing an independent employment and by the terms of the contract is free to exercise his own judgment and discretion as to the means and appliances that he may see proper to employ to do the work, exclusive of the control and direction in this respect of the party for whom the work is being done. Where the owner or contractor furnishes the material to be used and retains direction and control over the details of the work and the men employed he is liable for negligence of the men employed. (*Pioneer Construction Co.* v. *Hansen,* 176 Ill. 100; *Jeffer-*

*son* v. *Jameson & Morse Co.* 165 id. 138.) In *Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27, this court said: "The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. (*Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472.) The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. An independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified. An independent contractor is one who contracts to do a specific piece of work, furnishing his own assistance and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given him by the person for whom the work is done, without his being subject to the orders of the latter in respect to the details of the work. (*LaMay* v. *Industrial Com.* 292 Ill. 76; *Meredosia Drainage District* v. *Industrial Com.* 285 id. 68.) If the person for whom the work is being done retains the right to control the details and the manner and method by which the work is to be done the relation of employer and employee exists. The fact that payment is to be made by the piece or the job or the day or the hour does not necessarily control where the workman is subject to the control of the employer as an employee and not as a contractor.— *Franklin Coal Co.* v. *Industrial Com.* 296 Ill. 329; *Amalgamated Roofing Co.* v. *Travelers' Ins. Co.* 300 id. 487." See *Sinclair Refining Co.* v. *Industrial Com.* 317 Ill. 541.

The special pleas that the defendant did not own, possess, operate, manage or control the automobile and that the person operating it was not the agent or servant of the defendant nor under any supervision, control or subject to

any orders of the defendant raised issues of fact. Defendant, to maintain the issues in its behalf, introduced in evidence a contract between itself and Thomas Burke, the driver of the truck at the time of the accident, evidencing the sale of a Red Ball motor truck and equipment to Burke and an agreement to furnish him work, such work to consist of long distance hauling (principally household goods) between cities. Among the provisions of this contract were the following: "It is agreed and understood that the truckman is not an employee of the company nor is he in any way or at any time its agent, he, the truckman, in the moving or transferring of any and all shipments being an individual contractor, is at all times to be considered and treated as such." "Truckman agrees to make all collections as directed by the company and turn same in at the first company office he passes," and "truckman agrees to report to all Red Ball offices located in cities through which he is passing and that he will follow instructions given him by Red Ball managers."

Defendant claims that by reason of this contract it was relieved from all claims for damages arising through the negligence of Burke, and it conclusively established that Burke, in performing the services for defendant, was an independent contractor and that the relation of master and servant did not exist between them. While this contract was quite lengthy it was indefinite and ambiguous as to the work to be done, where and with whose truck it was to be done, as to the compensation to be paid therefor, as to what collections were to be made, as to what directions Burke was to receive from defendant and its agents, as to the character of such directions, the extent as to which Burke was to be bound thereby, and is contradictory in its terms, in that by provisions of the contract Burke is made its agent and in another provision it is stated that he is not in any way or at any time its agent. In construing a contract be-

tween two parties the court must take into consideration the entire scope of the contract, and must determine, if possible, from the terms of the contract, the legal effect thereof, and in so doing the court is not concluded as to the relations of the parties by the terms by which they have designated the contract or the parties thereto. It could not be contended that an instrument containing all the requirements of a warranty deed to convey a title in fee should be construed by the court as a lease and not a deed because the parties thereto had in the instrument described themselves as landlord and tenant and the instrument as a lease, or that an instrument which meets all the requirements of the law necessary for its probate as a will should be held to be not a will because the testator had designated the instrument as a note, bond, deed of indenture or deed poll. (*Austin* v. *First Trust and Savings Bank,* 343 Ill. 406; *Noble* v. *Fickes,* 230 id. 594.) Neither can a master by a contract with a servant, in consideration of the employment, exempt himself from liability to the servant for injuries sustained through the master's negligence, such a contract being void as against public policy. (*Campbell* v. *Chicago, Rock Island and Pacific Railway Co.* 243 Ill. 620; *Himrod Coal Co.* v. *Clark,* 197 id. 514.) Much less can the master by a contract with a servant exempt himself from liability to third persons for injuries sustained through the negligence of the servant. Where the contract under which the services are rendered for a defendant is in writing and is complete in itself and unambiguous in its terms, as in *Rosenbaum Bros.* v. *Devine, supra,* and *Pioneer Construction Co.* v. *Hansen, supra,* the question whether in performing the services the one so performing was an independent contractor would be determined by the court, as a matter of law, by a construction of the written contract. Where, however, the services are performed under a written contract which is not complete

in itself, is ambiguous in its terms or its meaning doubtful, and the parties by their conduct present a reasonable construction thereof, such construction will be adopted by the court. (*Merle* v. *Beifeld*, 275 Ill. 594; *Walker* v. *Illinois Central Railroad Co.* 215 id. 610; *Mueller* v. *Northwestern University*, 195 id. 236.) If the construction of the contract depends not only upon the meaning of the words employed but upon extrinsic facts and circumstances or upon the construction which the parties themselves have placed upon it, which is to be proved like any other fact if such facts are controverted, the inference to be drawn is for the jury, and in such case the whole question as to what the contract was should be submitted to the jury under proper instructions. *Turner* v. *Osgood Art Colortype Co.* 223 Ill. 629 .

Much competent evidence was introduced to show the relationship between defendant and Burke, the circumstances under which the services were performed and the practical construction that the parties themselves had placed upon the contract, and this evidence shows, when considered in connection with the contract, that Burke in performing the service was under the direction of defendant, and that defendant had, and at all times exercised, control over the manner of doing the work by Burke in all its details, and that it also had and exercised control over the truck. Defendant, as its advertisement on the truck indicated, was engaged in doing an extensive trucking business between most of the large cities in the United States, and this business was carried on by means of truckmen under contracts similar to Burke's and with a uniform type of van similar to the one used by Burke. These truckmen, as stated by defendant's president, constituted its "organization," and through their services contracts entered into by defendant with shippers over the country were carried out. All of the hauling done by the truckmen was in the execution of written contracts entered into on standard blanks

furnished by defendant, between it and shippers for the hauling of goods in Red Ball vans. These contracts contain specifications with reference to and limitations of the liability of each to the other for damages but make no reference to a limitation of liability for damages resulting from any act or negligence of the truckmen.

At the time of the accident Burke was on his way to perform a written contract between defendant and C. E. Seyfarth to haul a load of Seyfarth's goods from 1514 North Paulina street, Chicago, to Detroit, Michigan, for $200 to be paid to the Red Ball Transit Company prior to the delivery of the goods in Detroit, and which provided that defendant, in case of failure to receive payment of the shipping charge, should place the goods in storage in its name and provided for the sale of the goods for the hauling charge after due notice. The contract contains this provision: "If the Red Ball Transit Company's agent hires anyone else to swing piano or move same to any floor other than the first floor of a house or apartment they are doing so as the agent of the shipper, and it is agreed that the Red Ball Transit Company is not to be responsible for whatever happens to the handling of the piano by such services." The contract also provided for the payment to defendant of three dollars per hour after the first hour for every hour the truck was delayed after the first hour in starting to load or unload through any fault of the shipper. Other provisions were: "The Red Ball Transit Company declares that it carries blanket load insurance, and the shipper, in accordance with declared valuation hereof, requires protection against fire and collision, overturning of truck, flood and proven theft, in the amount of $5000, which amount the shipper declares to be the value of all goods in this shipment. The liability of the Red Ball Transit Company for damage to this shipment is limited to the value so declared, less hauling charges. In the event goods are damaged in transit or claim is made for damages then the Red Ball

Transit Company shall refer such claim to the insurance company, or shall appoint a reputable furniture repair man in the city where the goods are delivered or in the nearest point thereto, who shall appraise the damage, and the parties hereto agree that his appraisal shall be final and binding. Red Ball Transit Company is responsible only for goods loaded within the body of the truck, and goods so loaded constitute one truck load as herein mentioned and as hereafter specified on the reverse side of this contract under Special Agreement. It is further agreed that Red Ball Transit Company will not be liable for damages which cannot be avoided, such as ordinary wear and tear caused by the mode of transportation. This contract does not protect against loss to articles of virtu, curved or cut glass, works of art, photographs or pictures, jewelry, money, valuable papers, books, tapestries, linens or textiles, antiques or silverware, dishes, vases, in any one shipment, to an amount of over $100 and not over $5 on any single article. Wearing apparel not protected to over $300 and no one article or suit over $50 in any one shipment. Lamp shades under no circumstances protected for over $10. Liability of Red Ball Transit Company on any claim for loss or damage to any one rug in shipment under this contract is not to exceed $100. Red Ball Transit Company not responsible for any loss or damage due to extreme temperature. Liability of Red Ball Transit Company on bedding in a single shipment not to exceed $250. Red Ball Transit Company is not liable for hidden damage, where goods are boxed or crated and damage cannot be ascertained when goods are loaded or unloaded."

From a reading of this contract there can be no question that in its performance, as between defendant and Seyfarth, Burke was the servant of defendant and not an independent contractor. That defendant considered that the trucks and the persons operating the same were under its supervision, control and subject to its orders is manifested

by the following extract from an order issued by its president "to all truckmen:"

"I have been personally inspecting some trucks and the way they are kept, and I have heard repeatedly from our competitors of how filthy and uncleanly in the hauling household goods some of our truckmen are. In inspecting one truck this morning I found a five-gallon oil can setting back in the truck body with oil running out on the floor. Naturally, the oil would be mopped up later by moving pads. In another truck I found the truckman sleeping in the van body, using any number of comforts. Many of them do this, it is reported to us, with muddy and dirty shoes on. I further find that many of the trucks are not cleaned out properly, the pads are not folded up and stacked but spread all over the floor of the truck, others seem to take fairly good care and stack them and tie them up along the side of the truck. Now, I want it understood that all truckmen must get some gasoline and cloth and clean all greasy spots off of the floor and inside of the truck. This is one order they had better adhere to. I find, too, that truckmen go out and work on the truck and get all greasy and then proceed to carry mattresses, bedclothing and various pieces of furniture into a house in that condition. This must cease. If you have to work on your truck and get dirty it is my order to you to clean up before you attempt to load or unload any furniture. Any truckman caught sleeping on the inside of his van will be barred from hauling any loads for thirty days, and in addition to that, if any payments come due during that time we will let him figure with the finance company who holds the paper. These trucks are not made for bed-rooms or for carrying oil cans in. They are supposed to be kept clean and comforts properly folded and stacked up in each van body. I further find that truckmen will pick up one chair in one hand and put another on his shoulder and go in a house and knock a hole in the paper and then expect the man who we move to accept a mere

pittance for the damage. I want you to understand that the moving of furniture is a busines and one in which you must be careful, and while you are carrying a table through a door don't be telling stories or watching a fire department running down the street. I am sorry to have to put a general letter and order like this out, because we have a few gentlemen truckmen who should not be abused by having to read a letter like this, but I am assuring you now that this letter is written with the intention of not only benefiting myself but of financially helping every truckman in the organization. Further, it is the duty of any truckman in the organization to report this kind of service to the manager or general manager of this company, and to neglect doing it makes you an accomplice in fact. Any truckmen who have any rags in their truck must dispose of them at once. Coffee sacks, rags and that kind of packing must not be allowed in trucks. Bear in mind that we have prepared bunk quarters in the cab, and if you use any comforts for that use be sure and use the same ones all of the time and don't mix them up with the other comforts; also bear in mind that if any truckman has cut a hole from the cab into the van part of the body or a hole through the top compartment above the cab the same must be nailed in, as that is not a sleeping compartment, and the same rule and order applies to that as does to the sleeping in the van body."

Of like effect is an extract from an order issued "to all operators of six-wheel trucks:" "If you ever expect to accumulate anything on this equipment keep it in first-class shape. You are not supposed to pull bonehead tricks, such as speeding, starting in second or high, turning corners not knowing where you are going, driving in the face of glaring lights and running off into the ditch. The order is, when you meet a car with glaring lights, stop. You are just bringing on yourselves a higher insurance rate by the carelessness you pull off. Another thing, do not depend upon your brakes to do the stopping all the time when you are

coming up behind a car ten or fifteen rods back. Retard your gas and let the machinery stop itself, in a way—at least slow down. If you do not do this you will be spending money for break linings all the time. Now let's please have some common sense. See that your engine is properly oiled, and do not race your motor in the morning when the motor is cold from standing. Let it warm up slowly, and during this cold weather use alcohol or something else in your radiator and do not let it freeze up. Go over your truck daily, tighten up all loose bolts."

After the accident defendant's Chicago manager took possession of the truck operated by Burke at the time of the accident, put another man in charge of it and fulfilled its contract with Seyfarth by hauling his goods to Detroit. The truck was returned to Chicago, where Burke afterwards found it in a vacant lot used as a parking space. The written contract contained Burke's endorsement to the effect that he had carefully read it and understood that to keep it in effect he must comply with the terms thereof in every way or surrender his right to expect or demand the company to fulfill its part of the contract.

We do not consider it necessary to review in detail the mass of uncontradicted evidence which showed that in construing the relation between themselves both defendant and Burke acquiesced in the construction that defendant had the right to control the manner of doing the work done by Burke and the use of the truck in all its details, and that Burke in doing the work did not sustain the relation of one who rendered service in the course of an occupation representing the will of the defendant as to the result of the work, only, and not as to the means by which it was accomplished. Neither was Burke one who undertook to produce a given result without being in any way controlled as to the method by which he attained that result. Nor was he a contractor pursuing an independent employment, who by the terms of the contract was free to exercise his own

judgment and discretion as to the means and appliances that he might see proper to employ to do the work, exclusive of the control and direction in this respect and not subject to discharge by the party for whom the work was being done. The jury were therefore fully justified in answering in the affirmative the special interrogatory, "Was the driver of the van in question, at the time and place in question, acting as an agent for the defendant, Red Ball Transit Company?" No motion was made to set aside the jury's finding as to this special interrogatory, no mention thereof is made either in the motion for a new trial or in defendant's assignments of error, and the Appellate Court in reversing the judgment without remanding the cause did not make a finding of facts contrary to those found by the trial court. This court is conclusively bound by such special finding of fact. *Brimie* v. *Belden Manf. Co.* 287 Ill. 11; *Voight* v. *Anglo-American Provision Co.* 202 id. 462; *Brant* v. *Chicago and Alton Railroad Co.* 294 id. 606.

Complaint is made of the irregularity as to the manner of the presentation of plaintiff's case to the jury, and the Appellate Court says with reference thereto: "The manner in which plaintiff's attorneys presented her case tended to produce this confusion. After introducing their evidence as to the accident it was sufficient for them to have shown that the truck in question bore the name of the defendant, thus making out a *prima facie* case of ownership, and it was for the defendant to overcome this presumption, if possible, by producing its written contract and such other evidence as it desired, which the plaintiff could attack in rebuttal." Under the issues made in this case it was incumbent upon plaintiff to prove the allegations of its declaration with reference to Burke's relation to defendant, and in doing so it was proper for her to introduce any and all competent evidence which she had bearing upon that question in her case in chief without relying upon any presumption.

It is claimed that the court erred in submitting the written contract to the jury, together with the other evidence in the case, without construing it. In this case the facts were controverted, and whether or not Burke was an agent or employee of defendant or an independent contractor was a mixed question of law and fact, and the court properly submitted the whole question as to what the contract was to the jury under proper instructions. (*Turner* v. *Osgood Art Colortype Co. supra,* and authorities there cited.) In the present case the court gave to the jury ten instructions requested by defendant on the subject of independent contractor and master and servant and none were given on behalf of plaintiff. No cause of complaint in that respect exists.

Complaint is made as to the admission of incompetent evidence. The evidence complained of consists largely of the evidence above mentioned tending to show the relations between Burke and defendant and the construction which they had mutually placed upon the contract. This evidence was competent for that purpose. There was some evidence which was incompetent in that it was secondary as giving the contents of written instruments. The written instruments themselves were introduced in evidence, so that defendant was not harmed in that respect.

Other errors were assigned and argued but not passed upon by the Appellate Court.

In accordance with the views herein expressed the judgment of the Appellate Court is reversed and the cause is remanded to that court, with directions to pass upon the errors assigned and argued there but not considered.

*Reversed and remanded, with directions.*