Government and Civic Employees Organizing Committee, CIO et al., Appellants, v. Cook County School of Nursing et al., Appellees.

Gen. No. 45,907.

274

Opinion filed May 11, 1953.   Released for publication June 16, 1953.

GOLDBERG, DEVOE, BRUSSELL & SHADUR, of Chicago, for appellants; ABRAHAM W. BRUSSELL, MILTON I. SHADUR, and ABNER J. MIKVA, all of Chicago, of counsel.

JOHN GUTKNECHT, State's Attorney of Cook county, of Chicago, for certain appellees; GORDON B. NASH, and MELVIN F. WINGERSKY, Assistant State's Attorneys, both of Chicago, of counsel.

DANIEL D. CARMELL, of Chicago, for certain other appellee; FRED F. HERZOG, of Chicago, of counsel.

McKAY & KRULEWITCH, of Chicago, for certain appellees; DWIGHT McKAY, and H. B. KRULEWITCH, all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Government and Civic Employees Organizing Committee, CIO, a voluntary unincorporated association commonly called a labor union, and certain persons on behalf of themselves and others similarly situated, filed

an amended complaint in the circuit court of Cook county against Cook County School of Nursing, an Illinois not for profit corporation, Laila Skinner, Personnel Director of the school, Local Union 46, Building Service Employees International Union, A F of L, the County of Cook and the president and members of the Board of Commissioners of the county. The individual plaintiffs are residents of the county and have been for more than 90 working days employed as attendants, orderlies, ward clerks and diet maids in the Cook County Hospital. Plaintiffs asked a declaratory judgment that the persons working as attendants, orderlies, ward clerks and diet maids in the County Hospital are employees of the county and not of the school; that the county cannot dismiss them after the conclusion of their trial period of 90 working days, except for unsatisfactory service or conduct, irregular attendance or absence without notice or acceptable explanation; that no valid collective bargaining agreement exists between the county and defendant union; that the terms and conditions of employment are not regulated by the collective bargaining agreement between the school and defendant union; that the individuals are not required to become members in good standing of the defendant union; that they cannot be discharged for failure to pay dues to the union; and that the county has not granted authority to the school to discharge the employees. Plaintiffs also ask that the defendants be restrained from discharging the individuals for failure to pay dues to the union. Following the filing of answers by the defendants, reply by plaintiffs, the hearing of evidence and a reading of a stipulation as to the facts, the court dismissed the amended complaint for want of equity. Plaintiffs, appealing, ask that the decree be reversed and that the cause be remanded with directions to enter a decree as prayed in the amended complaint.

277

On August 15, 1929, the school and the county entered into a contract whereby the former agreed to furnish, direct and perform the nursing services required for the proper care and nursing of all patients in the County Hospital, and the county agreed to pay the reasonable costs and expenses incident thereto. The contract provided that the school have complete control both as to management, direction and dismissal of all persons engaged in the nursing service including the administrative and teaching personnel, departmental and ward supervising nurses, graduate nurses, students, orderlies, attendants, ward clerks and other workers necessary to the extent that they are a part of the hospital nursing service, and that the number, salaries and maintenance of such employees be determined by agreement between the school and the county. The effective date of the contract was October 1, 1929, and it was to continue in operation through regular provision and appropriation for the hospital nursing service by the county or until terminated by either party at the end of any fiscal year of the county by written notice to the other given at least eight months "prior to such date of termination."

On February 14, 1939, the Board of Commissioners adopted a resolution authorizing and directing the termination as of December 1, 1939, of the contract of August 15, 1929. A new contract substantially identical to the 1929 contract was executed later in 1939. Following the execution of the 1929 contract and ending on or about August 1, 1947, the school furnished the nursing service in the hospital pursuant to the agreements. During that period persons doing work as attendants, orderlies, ward clerks and diet maids in the hospital were employed by the school. They were paid their wages by the school out of a general fund appropriated to the school by the county for the express purpose of defraying necessary expenses for nursing services

in the hospital. Such individuals were not listed by name in the time record and payroll of the county, they did not make contributions to the County Employees' Annuity and Benefit Fund and were not entitled to benefits thereunder. Commencing August 1, 1947, all persons doing work as attendants, orderlies, ward clerks and diet maids in the hospital were listed by name in the time record and payroll of the county. The county paid these individuals their wages by issuing to them county checks signed by the proper county officials, and they became contributors to the County Employees' Annuity and Benefit Fund and eligible to the benefits thereunder.

For the fiscal year beginning the first Monday of December 1947, and for all subsequent years, the county has not made a general lump sum appropriation for the school but has listed in its appropriation ordinance the amount allocated for each employment job involved. This represented a change from the practice existing prior thereto. Prior to 1948 federal income taxes upon the wages paid persons doing work as attendants, orderlies, ward clerks and diet maids at the hospital were withheld by the school and the withholding statements identified the school as the employer. For the year 1948 and for all subsequent years federal income taxes upon wages of these employees were withheld by the county and the county was identified in the withholding statements as the employer. On May 17, 1949, the commissioners adopted a resolution, the preamble of which recited that the county and the school "mutually deem it necessary and expedient in the public interest and welfare to change the existing type of arrangement for obtaining nursing services" from the school, and it resolved that the contract "should be terminated; that a new arrangement between said parties is to be anticipated and eventually established"; that the president "be

279

and hereby is duly authorized, empowered and directed to terminate on behalf of this Board, the present contract" by giving written notice thereof in accordance with the terms of the contract, and that the president be further authorized, empowered and directed to confer with duly qualified officials of the school for the 'purpose of developing, promoting and fostering new arrangements for nursing services by the school to the county, which plans and arrangements shall be submitted to the board for final consideration, examination and action. Neither the county nor the school gave to the other a written notice that the 1939 contract be terminated. Since the adoption of the resolution no other plans or arrangements for the furnishing of nursing services at the hospital were presented or approved by the Board of Commissioners.

Defendant union has acted as collective bargaining representative for the individuals employed as attendants, orderlies, ward clerks and diet maids at the hospital. A number of persons, including plaintiff employees, voluntarily associated with and authorized plaintiff union to represent them for the purpose of collective bargaining. The number of persons employed as attendants, orderlies, ward clerks and diet maids in the hospital as of December 1, 1951, was 965, and as of that date the total number of individuals who had signed cards of the plaintiff union asking that it represent them as a collective bargaining representative, was 540. The officers of plaintiff union, since September 20, 1951, made numerous requests to the school and county asking for recognition as the collective bargaining representative, or for the holding of an election among the employees to determine their choice as representative. The requests were refused. Defendant union demanded that the officials of the school discharge all persons employed as attendants, orderlies, ward clerks and diet maids in the hospital who

failed to pay dues to the defendant union. On November 26, 1951, the personnel director sent to each of the plaintiff employees a notice declaring that she would be forced to terminate their services unless the officials of the defendant union notified her that such employees had paid their union dues by December 1, 1951. Officials of plaintiff union asked assurance of the school and the county that the employees would not be discharged for failure to pay dues to the defendant union. The requests were refused and the school, at the request and demand of the defendant union, continued to give notice of the discharge of employees for failure to pay dues to the defendant union, stating that under the contract with that union they were so required to do. By March 14, 1952, 63 employees had paid dues to the defendant union under protest and by March 15, 1952, the school had discharged 7 employees for failure to pay dues to that union. The collective bargaining agreement between the school and defendant union is dated November 30, 1945, but provides that it shall remain in effect from then until November 30, 1946, and "thereafter renew itself for a period of one year unless written notice is given by either party" of intention to amend or modify any of the provisions thereof. Following the execution of the collective bargaining agreement neither the school nor the union sent any notice of termination.

Plaintiffs maintain that the contract between the county and the school has been abandoned or abrogated; that no contractual relationship exists which could make the school the employer; that the county is the employer; and that the individual plaintiffs, as employees, cannot be discharged by the school. Plaintiffs emphasize that they are carried on the time records and payroll of the county; that they are paid by the county with county checks which say that the county is the employer; that federal income taxes are

withheld and paid by the county; that the appropriation ordinance of the Board of Commissioners specifically designates all the employees working at the school by position and number, fixing a salary for each; that these employees are listed in the appropriation ordinance and funds for their wages are appropriated in a manner identical with the listing of appropriations for other positions admittedly filled by county employees; and that the plaintiffs are contributors to the Cook County Annuity and Benefit Fund and the county deducts an amount from their wages as such contribution. Plaintiffs conclude from these facts that they are employees of the county and assert that the provision of the 1939 contract which gave the school control both as to employment, direction and dismissal was abandoned through the actions taken by the county in 1947, "with the ratification of such actions by defendant school." Plaintiffs state further that the resolution of May 17, 1949 abrogated the contract between the county and the school and conclude that "either the contract was partially abandoned or abrogated, or else it was completely abandoned or abrogated."

Defendants insist that the contract between the county and the school is in full force and effect and that the individual plaintiffs are employees of the school. The county had the right to make the contract with the school. See sec. 65, ch. 34, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 33.186]. Defendants raise no question concerning the contractual arrangement. The 1939 contract is to continue in operation through regular provision and appropriation until terminated by either party. It may be terminated at the end of any fiscal year by a written notice by either party given at least eight months prior to the closing of the fiscal year. The fiscal year of the county begins on the first Monday of December and ends on the Sunday preceding the first Monday of December of the following year.

282

As the president and commissioners are elected for four-year terms, it is obvious that the provisions of the contract do not unduly restrict the discretion of commissioners who may take office while the contract is in effect. The Board of Commissioners manage the affairs of the county in the manner provided by law. Sec. 64.5, ch. 34, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 33.069(5)]. The resolution of May 17, 1949 contemplated a conference between the president and officials of the school for the purpose of promoting new arrangements for nursing services by the school, and directed the president to give a written notice in accordance with the contract. The notice was not given. As less than eight months would intervene between the adoption of the resolution (May 17, 1949) and the closing of the fiscal year, the notice directed to be given would be ineffective. The subsequent actions of the County Board and the school indicated that they recognized the continued existence of the 1939 contract. The president presides over the meetings of the Board of Commissioners. Presumably, the commissioners were acquainted with the facts. We find that the contract of 1939 was not abrogated by the resolution of May 17, 1949.

We turn to a consideration of plaintiffs' argument that the provision of the contract which gave the school control of employment, direction and dismissal was abandoned through the actions taken by the county in 1947 and ratification of such actions by the school. The contract required that detailed budget estimates with supporting schedules be submitted to the county on or before November 30 of each fiscal year. These estimates were to be used as a basis for the appropriation. The school is required to prepare an estimate in writing of the amount for salaries and other expenses for the monthly periods ending on the last day of each month and to submit the estimate to the county at least

seven days before the end of the month. The county agreed to draw a warrant payable to the school covering these requisitions on or before the last day of each month. The school was required to furnish to the county a copy of the monthly payrolls within five days after the end of each month. Prior to the appropriation ordinance for the fiscal year commencing in December 1947, the appropriation was made to the school in a lump sum in accordance with the contract provisions and the detailed budget submitted by the school and approved by the board. Thereafter, the appropriation was made under the heading of the school, followed by an allocation for each employment job involved. It is clear from the record that the appropriation ordinance was adopted in contemplation of the contract between the county and the school. This ordinance is based on estimates submitted and considered by the commissioners. Since July 1947 the county has paid the employees and made deductions. However, the county and the school have by their actions clearly manifested an intent to carry on the 1939 contract.

From the beginning of their contractual arrangements the purpose has been to furnish the hospital, its patients and the community with the best quality nursing service. To that end the school and the county agreed that the school have complete control as to employment, direction and dismissal of persons engaged in the nursing service including attendants, orderlies, ward clerks and diet maids. The school hires and discharges these employees. The county does not claim or exercise any control over the manner in which the employees perform their work. We are of the opinion that the change in the mode of payment and in the appropriation procedure did not affect the relationship between the school and the nursing per-

sonnel. The inclusion of the employees in the school as participants in the county retirement system involved the exercise of legislative discretion and did not affect the contract between the school and the county. We find that the contract between the school and the county has not been abrogated and that the school is the employer of the individual plaintiffs.

██ In *Ferguson & Lange Foundry Co. v. Industrial Commission*, 346 Ill. 632, the court said (635):

"It is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee or as an independent contractor. Ordinarily no single feature of the relation is determinative but all must be considered together. (*Bristol & Gale Co. v. Industrial Com.* 292 Ill. 16). An independent contractor has been defined as one who renders service in the course of an occupation and represents the will of the person for whom the work is done only with respect to the result and not the means by which that result is accomplished. (*Hartley v. Red Ball Transit Co.* 344 Ill. 534; *Lutheran Hospital v. Industrial Com.* 342 id. 325; *Besse v. Industrial Com.* 336 id. 283; *Bristol & Gale Co. v. Industrial Comm. supra*). It also has been said that if the person for whom the service is rendered retains the right to control the details of the work and the method or manner of its performance, the relation of employer and employee exists. (*Hartley v. Red Ball Transit Co. supra; Nelson Bros. & Co. v. Industrial Com.* 330 Ill. 27). The right to control the manner of doing the work is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor."

Under the rule announced in these cases the individual plaintiffs are employees of the school under its con-

285

tract with the county. They are hired and discharged by the school, which has the right to control the details of their work.

■■ Finally, plaintiffs urge that there is no valid authority in the school to discharge or threaten to discharge the employees upon the demand of the defendant union, and that in effect the school, through its collective bargaining agreement with that union, attempts to give it the authority to determine who should be discharged. Plaintiffs say that the county in contracting with the school has delegated a function which would normally be carried out by the county, and that the authority to discharge the individual plaintiffs cannot be delegated to the defendant union. The collective bargaining agreement between the school and the union dated November 30, 1945, remains in force unless written notice 30 days prior to any anniversary date thereof is given of an intention to amend or modify the provisions thereof. No such notice has been given and the parties to the agreement continue to abide by its terms. We are of the opinion that the school had the right to enter into a collective bargaining agreement with the defendant. union. The school, as a corporation, acts through its directors, officers and employees. The contracts between the county and the school and between the school and defendant union are valid and subsisting. The court was right in dismissing the complaint for want of equity. Therefore, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

FRIEND, P. J. and NIEMEYER, J., concur.